IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 2, 2004 Session


BOBBY R. POSEY, and wife, SABRINA POSEY, and DALE TEAGUE, on
behalf of themselves and all others similarly situated, v. DRYVIT SYSTEMS,
INC., BARTON-RILEY COMPANY, LLC, BLAZER HOMES, INC., JAMES
EDWARD PEE, POLY-M CONTRACTORS, INC., REEVE
CONSTRUCTION COMPANY, INC., and THORNTON CONSTRUCTION
COMPANY, INC.


Direct Appeal from the Circuit Court for Jefferson County
No. 17,715-IV    Hon. O'Duane Slone, Circuit Judge


FILED MARCH 22, 2004


No. E2003-00392-COA-R3-CV


In this class action, the Trial Court refused to permit Homebuilders and individual claimants to
intervene. On appeal, we reverse as to Homebuilders, but affirm as to the individual claimants.


**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part,
Reversed in part, and remanded.**


HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which  D. MICHAEL SWINEY,
J., and William H. Inman, Sr. J., joined.

Angelia D. Morie, Nashville, Tennessee, and Julie Muth Goodman, Lexington, Kentucky, for
Appellants.

Gordon Ball, Knoxville, Tennessee, Gary E. Mason, Washington, DC, Stuart C. Markman, Tampa,
Florida, and Everette L. Doffermyre, Atlanta, Georgia, for Appellees.

Ellis A. Sharp and Jon M. Cope, Knoxville, Tennessee, and Peter W. Morgan, R. Bruce Holcomb,
and Maria Colsey Heard, Washington, DC, for Appellee, Dryvit Systems, Inc.

# OPINION

In this class action, the Trial Court refused to permit appellants to intervene.

## Background

The Class Action Complaint was filed on November 14, 2000, which listed the class representatives as Mr. and Mrs. William Humphrey, and the defendant as Dryvit Systems, Inc. The suit involves a synthetic stucco cladding material manufactured by Dryvit, which is used in residential and commercial construction. Plaintiffs asserted that Dryvit manufactured, distributed, and marketed this synthetic stucco product known as EIFS, while knowing that it was defective and would not perform as represented. The Complaint further alleged that Dryvit knew or should have known that water could not escape from beneath the cladding, and that any minor penetration of water would cause substantial damage to the structure underneath. At the time, plaintiffs sought certification of the following class:

> All persons who own a structure in the State of Tennessee on which an Exterior Insulation and Finish System ("EIF system") has been installed or any previous owner of such structures who incurred any costs or expenses to inspect, repair or replace the EIF system or other property damages by the EIF system at any time from November 14, 1990 until the date Defendant's continuing conduct is terminated (the "Class Period").

Plaintiffs alleged violations of the Tennessee Consumer Protection Act, strict liability, negligence, intentional misrepresentation, breach of warranties, negligent misrepresentation, and unjust enrichment.

Dryvit removed the case to federal court, but it was remanded to state court after the plaintiffs agreed to limit the amount in controversy. Upon remand, on April 8, 2002, plaintiffs filed an Agreed Order Granting Leave of Court to File Second Amended Class Action Complaint. The Order recites that plaintiffs have leave to file a Second Amended Complaint, and deemed it filed, but the complaint was not placed in the record at that time. In this Order, for the first time, the plaintiffs are listed as Bobby and Sabrina Posey and Dale Teague. There is no explanation in the record for this change of class representatives.

On the same date, the newly-named class representatives filed a Motion for Preliminary Approval of Settlement, and attached the proposed settlement agreement, which sought certification of a nationwide, rather than a statewide, class. This new class was defined as follows:

All Persons who, as of the Notice Date, in any State other than North Carolina, own Property that is clad in whole or in part with Dryvit EIFS installed after January 1, 1989. Excluded are those who: (1) prior to the Notice Date, have settled with Settling Defendant, providing a release of claims relating to Dryvit EIFS; or (2) have obtained a judgment against Settling Defendant for a Dryvit EIFS claim, or had a judgment entered against them on such claim in Settling Defendant's favor.

The proposed settlement provides eligible claimants with free home inspections, payment of half of their estimated repair costs (under certain conditions), a "Moisture Free Warranty", and payment of the class counsel's attorneys fees. The settlement also provides that any class member who does not opt out by a certain date is bound by the terms of the settlement (but they must also file a claim by a certain date to get any relief). The Court entered an Order for Preliminary Approval of Settlement, and set a fairness hearing for October 1, 2002.

One group of appellants herein, Barton-Riley Company, LLC, Blazer Homes, Inc., James Edward Pee, Poly-M Contractors, Inc., Reeve Construction Company, Inc., and Thornton Construction Company, Inc. ("homebuilders"), are contractors who utilized the Dryvit EIFS in constructing homes, and they filed a Notice of Intent to Appear at the Fairness Hearing, and also filed a Motion to Intervene, stating that they had substantial legal interests at stake, including rights of contribution and indemnity, which would be adversely affected by the settlement, and that their interests were not adequately represented by the existing parties.

Appellants Mr. and Mrs. Jerry Sullins also filed a Notice of Intent to Appear at the Fairness Hearing, and Mrs. Sullins filed an Affidavit stating that she was a resident of Sumner County, Tennessee, and that she and her husband owned a home built before 1987 which was clad with Dryvit's EIFS. Mrs. Sullins stated that she purchased the home in 1990, and had incurred costs since that time to repair or replace the EIFS.

Several other potential class members filed Notices of Intent to Appear in Opposition to the Proposed Settlement, from states such as South Carolina, Alabama, Texas, Louisiana, Missouri, etc. Class Counsel objected to the standing of certain objectors, and filed a Motion for Final Approval of Settlement and Petition for Award of Attorneys Fees and Expenses and Award to Class Representatives. Class Counsel also filed a Memorandum in Opposition to the Motion to Intervene. Class Counsel then filed the First Amendment to the Settlement, which amends the EIFS definition. Michael Angelovich, a member of the class, also filed a Motion to Intervene, asserting that class counsel did not adequately represent his interests.

The first fairness hearing was held on October 1, 2002, but the court did not allow any proof to be presented, and only allowed limited oral argument. During the hearing, the Court commented that the homebuilders were not members of the class, and thus were not bound by the settlement, and that the class members were adequately represented by class counsel. The Court then denied the Motion to Intervene filed by the homebuilders as untimely. The Court heard from the objectors to the settlement and class counsel, and there were discussions regarding the length of the

notice period, and enhancements to the settlement. The settlement was not approved at that time.

Other documents were filed after the hearing by the objectors, and class counsel filed a Second Amendment to the Settlement Agreement, which provided additional options for claimants with repair costs in excess of $15,000.00 but less than $25,000.00, additional options for claimants with repair costs in excess of $25,000.00, and there was also a section added regarding mold remediation.

Another hearing was held on December 18, 2002, and the Court heard arguments from class counsel and some of the objectors. On January 14, 2003, the Court entered an Order and Judgment Granting Final Approval of Settlement, wherein the Court found that the settlement as amended was fair, reasonable, and an adequate compromise of the claims against defendant. The Order states that the certified class consists of:

> All Persons who, as of June 5, 2002, in any State other than North Carolina, in whole or in part, with Dryvit EIFS installed after January 1, 1989, except persons who (1) prior to June 5, 2002, have settled with Dryvit, providing a release of claims relating to Dryvit EIFS; or (2) have not obtained a judgment against Settling Defendant for a Dryvit EIFS claim, or had a judgment entered against them on such a claim in Settling Defendant's favor; and (3) any employees of Dryvit.

The homebuilders then filed a Motion regarding the description of the class, stating that the class definition was meaningless, but the Court ignored this Motion. The First Amendment to the Settlement Agreement was made a part of the record, as was the Second Amended Class Action Complaint, along with a Motion to allow it to be filed nunc pro tunc.

The homebuilders and Mr. and Mrs. Sullins filed Notices of Appeal, as did several of the other objectors who were class members. However, all of the other appeals were voluntarily dismissed, such that the only appellants before this Court are the homebuilders and Mr. and Mrs. Sullins. The issues on appeal are:

1. Whether the trial court erred in denying the homebuilders' Motion to Intervene as untimely?

2. Whether the homebuilders should have been granted intervention?

3. Whether the Sullins have standing to appeal?

4. Whether the class certification and approval of settlement were proper?

**Discussion of The Issues**

The Trial Court denied the homebuilders' Motion to Intervene as untimely. As this Court has previously recognized, "the timeliness of an intervention is governed by equitable principles, and is determined by the facts and circumstances of each particular case." *American Materials Technologies, LLC v. City of Chattanooga*, 42 S.W.3d 914 (Tenn. Ct. App. 2000). In determining whether the motion to intervene was timely filed, the Court is required to consider:

> (1) the point to which the suit has progressed;
> (2) the purpose for which intervention is sought;
> (3) the length of time preceding the application during which the proposed intervener knew or reasonably should have known of his interest in the case;
> (4) the prejudice to the original parties due to the proposed intervener's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and
> (5) the existence of unusual circumstances militating against or in favor of intervention.

*Id.* at 916.

The Complaint initiating this litigation was filed on November 14, 2000, and defendant never filed an Answer. The case was removed to federal court, and then remanded back to state court in June 2001. The Complaint was then allowed to be amended on April 8, 2002 (but the amended Complaint was not filed with the court until much later, after the Judgment had been entered.) Also on April 8, 2002, the class representatives filed a Motion for Preliminary Approval of Settlement, along with the settlement agreement. It was not until the filing of these documents on April 8, 2002, that the proposed class was changed to a nationwide class, the terms of the settlement were put in the record, and the class representatives were changed. An Order granting preliminary approval to the settlement was signed that same day. The notice of the proposed settlement was to begin going out no later than 90 days from that date, and then the parties were given 90 days from the notice date to opt out, enter objections, etc. The fairness hearing was set for October 1, 2002.

The homebuilders filed their Motion to Intervene on September 3, 2002, one month prior to the fairness hearing, and only five months from the date the class was changed and the proposed settlement was filed and approved. The motion was filed well within the time limits for objections to the settlement agreement, and was filed before the settlement was entered and reduced to a judgment. Thus, the only progress which the suit had experienced to that point was the settlement itself - there was no answer, no discovery, no hearings, etc.

The homebuilders' claimed purpose for seeking intervention is to insure that none of their legal rights are compromised by the proposed settlement. The homebuilders claim that because EIFS is inherently defective, requiring that it may be repaired and remain on the homes (as the settlement does) will only exacerbate the structural damage caused to the homes, and could ultimately increase the liability of the homebuilders as well. Thus, the homebuilders sought to

intervene to participate in the settlement proceedings and provide the Court with additional information regarding the viability of the repairs, etc. The homebuilders also sought to question the applicability of the judgment reduction provision, and its effect on their rights of contribution and indemnity.

There is no proof in the record regarding when the homebuilders knew of their interest in the case, but they reasonably should have known as of the date the notice of the settlement went out (assuming for this purpose that the notice was adequate). This would have been less than 90 days before the Motion to Intervene was filed. Their motion was filed promptly after they reasonably should have known of their interest in the case, and thus there was no prejudice to the parties due to a failure to file earlier.

In this case, there are unusual circumstances which militate in favor of intervention. This is a nationwide settlement which is estimated to affect at least 95,000 homeowners. There were serious questions raised (even by the trial judge himself) regarding adequacy of notice and of the terms of the settlement. (The high number of opt-outs and the low number of responses in general demonstrate there may have been valid concerns as to both.) The homebuilders have attempted to show the Court that there may be numerous deficiencies in the repair protocol that the settlement utilizes, but the Court refused to consider any of this proof after finding the Motion to Intervene was untimely. The homebuilders also argued that their interests were not adequately represented by the existing parties, and this is obviously true considering how vehemently the parties resisted the homebuilders intervention.

This action has such far-reaching implications that consideration of all opposing points of view is imperative. For all of the above reasons, it is clear that the motion to intervene filed by the homebuilders should not have been ruled untimely, and the Trial Court was in error for so ruling. As we have noted, decisions of this type should be based on equitable principles, and it would be inequitable indeed to determine a motion to intervene to be untimely when there had been no answer filed, no discovery done, no final judgment, and when it was filed within a reasonable time of the movants' knowledge of their potential interests.

The homebuilders sought intervention as of right or permissive intervention pursuant to Tenn. R. Civ. P. 24. As to intervention as of right, the homebuilders are required to show "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties; . . .". The denial of a motion to intervene as of right is reviewed *de novo* on appeal. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186 (Tenn. 2000).

As the Supreme Court in that case recognized, "the precise nature of the interest required to intervene as of right has eluded exact definition, . . . the right does not include a mere contingent, remote, or conjectural possibility of being affected as a result of the suit, but must

involve a direct claim on the subject matter of the suit such that the intervenor will either gain or lose by direct operation of the judgment." *Id.* at 192. Appellees rely on *Brown & Williamson* to deny intervention. However, the *Brown & Williamson* case is inapposite. That case was not a class action as the Opinion notes at p. 189:

> The state's Complaint stated that the suit was brought by the State in its capacity as a sovereign, not as a class action on behalf of Tennessee residents. Thus, the State was not seeking relief on behalf of any individual or party other than itself.

The Court went on to hold that intervention of right was not appropriate to adjudicate legal interest of an indefinite character, nor hypothetical or speculative scenarios that may never come to pass.

The Rule conferring the right to intervene is remedial, and is to be liberally construed. *See* 59 Am.Jur.2d, *Parties*, § 168, p.587. The right to intervene in litigation must be a substantial interest, a legal interest, an interest known and protected by the law, or must be sufficiently related to the original action. *See* 59 Am.Jur.2d., *Parties*, § 176, p.594.

In this case the terms of the Settlement expressly impact upon the homebuilders' interests. Section 18.03 of the Settlement Agreement provides:

> Some settlement class members may pursue separate actions against the builders or other third parties who may be responsible for damages to their homes, including damages for which those third parties may contend that the Settling Defendant is liable in whole or in part. It is the Parties intent that the Settling Defendant shall not be required to participate in such separate actions. If claims for indemnity or contribution are brought against a Settling Defendant despite the provisions of this section and the Class Member's counsel is unaware thereof, the Settling Defendant shall notify the Class Member's counsel of the assertion of the claims. . . . In addition, the Settling Defendant shall, as necessary, expressly authorize and acknowledge the right of the Settlement Class Member to intervene in his or her own name or in the name of the Settling Defendant in any proceeding asserting a contribution or indemnity claim against a Settling Defendant as described above in order to plead any matter in defense of such contribution and indemnity claim or in avoidance of any determination of liability which would cause a reduction to such Settlement Class Member's judgment as provided in Section 18.2 of this Agreement.

This provision would impact upon actions brought pursuant to Tenn. R. Civ. P. Rules 13, and 14. Moreover, claims for indemnity against Dryvit Systems, Inc., by the homebuilders could exceed the amount of any judgment obtained by the homeowner. [1]

---

[1]The homebuilders in an appendix to their reply brief, included pleadings from a Franklin County, Tennessee case to the effect that Dryvit has attempted to use the JRP in order to obtain

We hold that the homebuilders may intervene as of right in this class action, and the Order of the Trial Court denying their intervention is reversed. Upon remand, the settlement will be stayed until the intervenors are allowed to participate in determination of their rights in this action. As stated in 59 Am.Jur.2d. *Parties,* §244 (2002):

> By the very definition of intervention, the intervenor is a party to the action. After intervention, the intervenor is as much a party to the action as the original parties, and renders itself vulnerable to complete adjudication of the issues in litigation between itself and adverse party. To make its right effectual, the intervenor must necessarily have the same power as the original parties, subject to the authority of the Court reasonably to control the proceedings in the case.

Jerry and Melanee Sullins have appealed from the judgment approving the settlement, basically arguing that they were members of the class originally requested to be certified by the Class Action Complaint, and that they were then "cut out" of the class when it was amended in the Second Amended Class Action Complaint, without notice or opportunity to be heard. These appellants recognize that the first class was never certified, but argue that it should not have been changed by the class counsel without court scrutiny, relying upon Tenn. R. Civ. P. 23.05, which states: "A class action shall not be voluntarily dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs."

We have found no cases interpreting this particular provision. However, the requirements regarding court approval and notice apply only after a class has been properly certified. Appellants cite certain federal cases from other jurisdictions which required notice and court scrutiny of the dismissal of a class action before the class was certified, but this has now been modified by the 2003 amendments to the Federal Rules of Civil Procedure, such that the federal version of rule 23 now states: "The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." While we not bound by the federal rules or the decisions interpreting them, it would be unreasonably burdensome to require trial courts to direct notice of any changes in a class make-up to all potential class members before the class is ever certified as a proper and adequate class. Accordingly, since Mr. and Mrs. Sullins were not a part of the class as certified, they are not bound by this settlement or these proceedings in any way, and are free to pursue their own action against the defendant. Their rights have not been prejudiced by this lawsuit, since they are not parties to it, and they likewise have no standing to appeal as non-parties. Accordingly, we dismiss their appeal.

Finally, it is obvious that the Trial Court is required to address the matter of class definition as contained in its final order, which as certified is a meaningless class. Thus, that classification must be revisited and the Trial Court will be required to enter an Order at the

---

summary judgment in another lawsuit filed by a homeowner against the contractor, where Dryvit was brought in by the contractor for contributions/indemnity.

appropriate time which properly certifies the class.

For the foregoing reasons, we affirm the Judgment of the Trial Court in part, reverse in part, and remand. One-half of the cost of the appeal is assessed to Dryvit Systems, Inc., and one half of the cost is assessed to Jerry and Melanee Sullins.

_____
HERSCHEL PICKENS FRANKS, J.