IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2019 Session

## LATONYA DENISE HALL v. SAMMIE LEE WILLIAMS, III

Appeal from the Circuit Court for Montgomery County
No. CC-2016-CV-398     Ted A. Crozier, Judge

_____

No. M2018-1738-COA-R3-CV

_____

This post-divorce appeal concerns the trial court's modification of a permanent parenting plan.  We affirm the parenting plan determination and all other rulings by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J. M.S, and ANDY D. BENNETT, J., joined.

Robert T. Bateman, Clarksville, Tennessee, for the appellant, Latonya Denise Hall.

Daniel P. Bryant, Clarksville, Tennessee, for the appellee, Sammie Lee Williams, III.

## OPINION

### I.     BACKGROUND

Latonya Denise Hall ("Mother") and Sammie Lee Williams, III ("Father") married in 2003.  Two children were born of the marriage.  The Parties were divorced in December 2007 in Seoul, Korea.  At that time, the Parties were in the U.S. Army and stationed in Korea.  The court awarded joint custody but designated Mother as the primary residential parent and tasked Father with remitting child support.  The Children resided primarily with Mother at that time; however, they began residing with Father when he returned from deployment in 2014.  The Parties agreed that the Children would remain with Father for approximately one year.  When Mother attempted to retrieve the Children in 2015, Father and his wife ("Stepmother") refused.

Mother filed a petition to register and modify the court's order on March 4, 2016, in the Circuit Court for Montgomery County.  During the pendency of the hearing,

Mother received orders to return to Korea. The Parties then entered into an agreed temporary order on August 4, 2016, awarding Father physical custody of the Children, pending further orders of the court. Mother was provided with the right to telephone communication during her deployment.

Mother returned from deployment in September 2017. The case proceeded to a hearing in July 2018. At that time, Father had retired and was residing in Clarksville, Tennessee. Mother was stationed in Texas but had also applied for retirement. She planned to remain in Texas following her retirement.

Mother testified concerning Father and Stepmother's refusal to communicate during her last deployment. She submitted documents establishing that her ability to speak with the Children was severely hampered by them. She alleged that Father and Stepmother also provided her with an incorrect address, resulting in her inability to send the Children gifts during her deployment.

Father denied Mother's claims and asserted that she failed to remit child support while the Children have been in his care for approximately four years. He claimed that the Children are doing well in Clarksville. He stated that the Children receive above-average grades, are involved in extracurricular activities, and have developed friendships while living in Clarksville. He stated that the Children also live with their half-siblings and that the paternal grandparents planned to move to Clarksville in October.

The trial court found that a material change in circumstances had occurred that necessitated a change in the parenting plan. The court found that the Children were not residing exclusively with Mother as anticipated by the existing parenting plan but had instead lived together with the Parties, with relatives, or with Father for extended periods of time. The Court explained its findings as follows:

> a. From December 11, 2007[,] until March 2008, the [P]arties lived together as a family in Korea;
> b. In March 2008, the [P]arties relocated from Korea to Fort Lewis, Washington and lived together as a family in Washington from March 2008 until June 2009;
> c. From June 2009 until June 2010, the [C]hildren resided with [the maternal grandparents] in the State of Florida;
> d. From June 2010 until September 2010, the [C]hildren resided with [Father] in Fort Lewis, Washington;
> e. From September 2010 until February 2011, the [P]arties resided together as a family in Washington;

f.    From March 2011 until September 2011, the [C]hildren resided with the Mother and therefore, child support should have been paid by [Father] during this period of time;

g.    From October 2011 until June 2012, the [C]hildren resided with [Father];

h.    From June 2012 until July 2014, the [C]hildren resided with [Mother] in Virginia and therefore, child support should have been paid by [Father] during this period of time; and

i.    From August 2014 until the present day, the [C]hildren have resided exclusively with [Father] in Montgomery County, Tennessee.

Based upon the aforementioned timeline, the court found that it was in the best interest of the Children to designate Father as the primary residential parent. The court based its decision largely upon the fact that the Children had resided with him exclusively throughout the four years prior to the hearing, had established significant relationships with his other children and extended family, and were settled in their community. The court awarded Mother 100 days of co-parenting time and also directed the Parties to each claim one child as a dependent for tax purposes. Mother was tasked with remitting child support; however, her support obligation was offset by Father's child support arrearage of approximately $59,334 until paid in full. This timely appeal followed.

## II.    ISSUES

A.    Whether the court erred in designating Father as the primary residential parent.

B.    Whether the court erred in its allocation of the tax exemption.

C.    Whether either party is entitled to attorney fees on appeal.

## III.    STANDARD OF REVIEW

This case was tried without a jury. We review the findings of fact made by the trial court de novo, with a presumption of correctness unless the preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d 714, 731 (Tenn. 2005). The trial court's conclusions of law, however, are reviewed de novo and "are accorded no presumption of correctness." *Brunswick Acceptance Co., LLC v. MEJ, LLC*, 292 S.W.3d 638, 642 (Tenn. 2008).

# IV.    DISCUSSION

## A.

Mother argues that the court erroneously based its decision upon Father's current status as the primary caregiver.  She argues that the court's reliance upon these facts was misplaced because Father refused to return the Children as promised.  She believes that his failure to facilitate her close relationship with the Children should have been the deciding factor.  Father responds that the court's designation is supported by the record as evidenced by his status as the primary caregiver for approximately four years and the Children's established ties to their home and community.  He denies Mother's claims that he failed to facilitate her relationship with the Children and explains that he is willing to communicate with her and ensure that she spends time with them.

Permanent parenting plans are incorporated into final divorce decrees involving minor children, and parties are required to adhere to such plans until modified by law. Tenn. Code Ann. § 36-6-404; *Armbrister v. Armbrister*, 414 S.W.3d 685, 697 (Tenn. 2013).  "A custody decision, once final, is res judicata upon the facts in existence or reasonably foreseeable when the decision was made." *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing *Young v. Smith*, 246 S.W.2d 93, 95 (Tenn. 1952)).  However, the law recognizes that circumstances change; therefore, the court is "empowered to alter custody arrangements when intervening circumstances require modifications." *Scofield*, 2007 WL 624351, at *2 (citing Tenn. Code Ann. § 36-6-101(a)(1)).

Tennessee Code Annotated section 36-6-101(a)(B) provides, in pertinent part, as follows:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance.  A material change of circumstance does not require a showing of a substantial risk of harm to the child.  A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

A trial court's determination of whether a material change in circumstances has occurred is a factual question. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them unless the evidence preponderates against the trial

court's findings. Tenn. R. App. P. 13(d). Here, the record supports the court's finding that a material change in circumstances had occurred that necessitated a change in the parenting plan.

Modification of a residential parenting plan is a two-part process: the court must first determine whether there has been a material change in circumstances, and then second, the court applies the "best interest" factors set forth in Tennessee Code Annotated section 36-6-106 in determining the particulars of the necessary change. *Armbrister*, 414 S.W.3d at 697-98. The factors are as follows:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's [] past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents [] to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

The record confirms that the Children have established healthy relationships with the Parties but have resided exclusively with Father for the past four years. He has provided excellent care for them in her stead and has allowed them to flourish in their

environment. While Father demonstrated an ability and willingness to co-parent prior to 2014, we must admonish him for his failure to communicate and facilitate Mother's involvement in the Children's lives since that time. His behavior as indicated by the record was reprehensible and must improve. We acknowledge that he has since indicated his intent to encourage the Children's relationship with Mother. We advise him that a failure to so comply with the court's order will lead to continued court involvement. With these considerations in mind, we affirm the court's designation of Father as the primary residential parent.

B.

Father argues that the court erred in allowing Mother to claim a child as a dependent for tax purposes when he was designated as the primary residential parent for both children. He explains that the Child Support Guidelines provide that only the primary residential parent may claim the tax exemption and that the court's holding, without explanation, is in violation of the Guidelines. Mother responds that she should receive the exemption for both children until Father's arrearage has been fulfilled.

The Guidelines provide, in pertinent part, as follows:

2. Taxation Assumptions.
(i) All income is earned income subject to federal withholding and the Federal Insurance Contributions Act (FICA/Social Security).

(ii) The alternate residential parent will file as a single wage earner claiming one withholding allowance, and the primary residential parent claims the tax exemptions for the child.

(iii) The Schedule's combined obligation includes the tax adjustments for federal withholding and the Federal Insurance Contributions Act (FICA/Social Security).

*See* Tenn. Comp. R. & Regs. 1240-02-04-.03(6)(b)(2) (emphasis added). This court has rejected any attempt to interpret the assumption as a requirement, holding that the tax assumption "is merely a mathematical assumption with no bearing on the trial court's discretion to award the tax exemptions." *Blankenship v. Cox*, No. M2013-00807-COA-R3-CV, 2014 WL 1572706, at *15 (Tenn. Ct. App. Apr. 17, 2014) (quoting *Crews v. Staggs*, No. M2010-01624-COA-R3-CV, 2011 WL 2848745, at *2 (Tenn. Ct. App. May 31, 2011)). *See also Taylor v. Taylor*, No. E2013-01734-COA-R3-CV, 2014 WL 3763727, at *12 (Tenn. Ct. App. July 30, 2014) (finding no error in a similar case); *Farmer v. Stark*, No. M2007-01482-COA-R3-CV, 2008 WL 836092, at *9 (Tenn. Ct.

App. Mar. 27, 2008) ("[T]he quoted taxable assumption does not constitute a rule bearing on the trial court's discretion to award the tax exemptions."); *Chandler v. Chandler*, No. W2006-00493-COA-R3-CV, 2007 WL 1840818, at \*9 (Tenn. Ct. App. June 28, 2007) ("The decision of a trial court regarding the allocation of exemptions for minor children is discretionary and should rest on facts of the particular case.").

Here, Father had accrued a significant support arrearage pursuant to the original permanent parenting plan. Considering the unique circumstances of the case and the Parties' failure to adhere to the residential schedule as a result of their work responsibilities, the court declined to hold Father in contempt for his failure to pay. Instead, the court offset Mother's current support obligation as a result of the modification against Father's support arrearage. The trial court also directed each party to claim one child every year for purposes of the federal tax exemption. With these considerations in mind, we conclude that the trial court did not abuse its discretion in alternating the yearly tax exemption.

C.

Father requests attorney fees on appeal, claiming that this appeal has been a burden upon him financially when Mother has not been held responsible for child support while the Children have been in his care. Mother also claims entitlement to attorney fees on appeal given Father's greater income potential and his current child support arrearage.

Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). A right to recover attorney fees in custody and child support disputes at trial or on appeal was created in Tennessee Code Annotated 36-5-103(c),[1] which provides,

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

---

[1] The statute was revised on July 1, 2018. The provisions of the revised statute do not apply to this action.

(Emphasis added.).  Exercising our discretion in such matters, we decline the competing requests for attorney fees on appeal.

## V.    CONCLUSION

We affirm the decision of the trial court and remand for such further proceedings as may be necessary.  Costs of this appeal are taxed equally to the parties, Latonya Denise Hall and Sammie Lee Williams, III.

_____
JOHN W. McCLARTY, JUDGE