IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

# STATE OF TENNESSEE, ET AL. v. BROWN & WILLIAMSON TOBACCO CORPORATION, ET AL. v. GREGORY BENNETT PERRY and STEVE LLOYD CHAMPION, ET AL.

**Consolidated Appeal from the Chancery Court for Davidson County**
**No. 98-3776-I    Hon. Carol L. McCoy, Chancellor**
**No. 98-3771-II    Hon. Irvin Kilcrease, Jr., Chancellor**

---

**Consolidated Appeal No. M1999-00455-SC-R11-CV - Decided April 19, 2000**

**FOR PUBLICATION**

The issue in this appeal is whether two groups of individuals should be allowed to intervene in a suit filed by the State of Tennessee against several tobacco product manufacturers. The State's suit against the tobacco defendants sought money damages, declaratory relief, and injunctive relief in connection with the marketing and sale of tobacco products in Tennessee. The trial court (Chancellor Irvin Kilcrease, Jr.) approved a settlement between the State and the tobacco defendants and dismissed the State's complaint. The trial court also rejected attempts to intervene in the State's suit by two groups of individuals, the first seeking damages from tobacco companies for increased medical insurance premiums, and the second consisting of tobacco users seeking damages from tobacco companies and their lawyers seeking attorney's fees. The trial court (Chancellor Carol L. McCoy) dismissed a declaratory judgment action filed by one of the groups of proposed intervenors. Both groups of the proposed intervenors appealed, and this Court granted an expedited appeal under Tenn. Code Ann. § 16-3-201(d). For the reasons explained hereafter, the trial courts are affirmed.

**Appeal pursuant to Tenn. Code Ann. § 16-3-201(d) from Court of Appeals to Supreme Court; Judgments of Trial Courts Affirmed**

DROWOTA, J., delivered the opinion of the court, in which ANDERSON, C.J., BIRCH, HOLDER, and BARKER, JJ., joined.

J. D. Lee and David C. Lee, Knoxville, Tennessee, for intervenors-appellants, Steven Lloyd Champion, et al.

Gordon Ball, Knoxville, Tennessee, for intervenors-appellants, Gregory Bennett Perry, et al.

John A. Lucas, Knoxville, Tennessee, and Robert G. McDowell and James A. Delanis, Nashville, Tennessee, for appellees, Brown & Williamson Tobacco Corporation, et al., John A. McReynolds, Jr., Knoxville, Tennessee, for appellee Liggett Group Inc.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Russell T. Perkins, Special Deputy for Litigation; Carolyn Underwood Smith, Assistant Attorney General, Nashville, Tennessee, for appellee, State of Tennessee

**OPINION**

In this case the State of Tennessee filed suit against several tobacco product manufacturers seeking monetary, declaratory, injunctive, and other relief in connection with the marketing and sale of tobacco products in Tennessee. Upon approval by the trial court of a settlement between the State and the tobacco defendants, the State's complaint was dismissed. A group of individuals seeking damages from tobacco companies for increased medical insurance premiums (collectively referred to as the "Perry intervenors") filed a declaratory judgment action and a motion to intervene in the State's suit. The declaratory judgment action was dismissed and the motion to intervene was denied. A separate group of individuals consisting of tobacco users seeking damages from tobacco companies and their lawyers seeking attorney's fees (collectively referred to as the "Beckom intervenors") also filed a motion to intervene in the State's suit. Their motion to intervene was likewise denied. Both groups of proposed intervenors appealed to the Court of Appeals, which consolidated the cases. The State subsequently moved this Court to assume jurisdiction of this matter pursuant to Tenn. Code Ann. § 16-3-201(d) on the grounds that the case is of compelling public importance in that it involves a substantial amount of State revenue.[1] We agreed and assumed jurisdiction over the case.

After carefully examining the record before us and considering the relevant authorities, we conclude that the trial court correctly dismissed the declaratory judgment action filed by the Perry intervenors, as well as their motion to intervene in the settlement action. Moreover, we conclude that the trial court correctly denied the motion to intervene filed by the Beckom intervenors. Accordingly, for the reasons explained hereafter, the trial courts are affirmed.

**BACKGROUND**

On December 21, 1998, the State of Tennessee filed suit in the Chancery Court of Davidson County against Brown & Williams Tobacco Corporation, along with several other tobacco manufacturers and trade associations.[2] The State's complaint included claims for relief under the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq., the Tennessee Trade

---

[1]This Court is authorized to assume jurisdiction over an undecided case pending in the intermediate appellate courts when a "compelling public interest" is at stake, or when the case is "of unusual public importance" and involves state taxes, the right to hold or retain public office, or constitutional issues. Tenn. Code Ann. § 16-3-201(d).

[2]The tobacco defendants named in the State's complaint included Brown & Williamson Tobacco Corporation; Liggett Group, Inc.; Lorillard Tobacco Company; Philip Morris Incorporated; R.J. Reynolds Tobacco Company; United States Tobacco Company; United States Tobacco Manufacturing Company, Inc.; and United States Tobacco Sales and Marketing Company, Inc.

Practices Act, Tenn. Code Ann. § 47-25-101, et seq., and a claim for unjust enrichment. The State's claims were based on the alleged misconduct of the tobacco defendants in manufacturing, distributing, and marketing of tobacco products in Tennessee. Among other things, the State alleged that the tobacco defendants made unfair, deceptive, and misleading claims about the addictive nature of nicotine, targeted young people in their advertising, misrepresented the health consequences of using tobacco products, and imposed a significant financial burden on taxpayers who have supported the medical costs of individuals dependent on financial assistance from the State because of their addiction to cigarettes and smokeless tobacco products. The State sought declaratory and injunctive relief, as well as money damages resulting from the State's payment of medical expenses for tobacco related diseases caused by the marketing, sale, and use of the defendants' products. The State's complaint stated that the suit was brought by the State in its capacity as sovereign, not as a class action on behalf of Tennessee residents. Thus, the State was not seeking relief on behalf of any individual or party other than itself.

On the same day that the State filed suit, the State and the tobacco defendants submitted a Master Settlement Agreement ("MSA") to Chancellor Irvin Kilcrease for approval.[3] Pursuant to the MSA, the State is projected to receive approximately 4.8 billion dollars through the year 2025, and annual payments in perpetuity thereafter in amounts expected to exceed 100 million dollars per year. In addition to the cash settlement, the MSA grants various forms of injunctive relief, such as enjoining the tobacco defendants from targeting youth or using cartoons in their advertising. The agreement also bans outdoor advertisements and limits tobacco advertising in sporting events, concerts, and similar activities. In exchange for the money and injunctive relief, the MSA provides for the release of claims against the tobacco defendants. The State cannot begin receiving any money under the MSA until the State achieves "state specific finality," which means that all litigation pertaining to the MSA in the State must be resolved. Tennessee is one of a small number of states that has yet to achieve this status. Chancellor Kilcrease approved the settlement and dismissed the State's complaint against the tobacco defendants on the same day it was filed, December 21, 1998.

On December 18, 1998, the Perry intervenors filed a declaratory judgment action in the Chancery Court of Davidson County before Chancellor Carol McCoy, seeking to have their rights under the MSA determined. Specifically, the Perry intervenors sought a declaration that the MSA did not impair their ability to maintain a pending action against the tobacco defendants.[4] Chancellor

---

[3]The MSA, which is 147 pages long excluding numerous exhibits, was reached between the tobacco industry and 46 states, along with the District of Columbia, Puerto Rico, the United States Virgin Islands, American Samoa, the Northern Mariana Islands, and Guam. The four remaining states previously reached agreements with the tobacco industry. No state has rejected the MSA. See State v. Philip Morris, Inc., 686 N.Y.S.2d 564, 566 n.3 (N.Y. Sup. Ct. 1998), aff'd, 693 N.Y.S.2d 36 (N.Y. App. Div. 1999).

[4]The Perry intervenors had pending a proposed class action suit against the tobacco defendants in the Circuit Court of Coffee County. In their suit, the Perry intervenors sought to

McCoy dismissed the declaratory judgment action on the basis of sovereign immunity, res judicata, and her determination that the Perry intervenors were seeking an advisory opinion regarding the impact of the MSA on their Coffee County litigation.

In addition to filing a declaratory judgment action before Chancellor McCoy, the Perry intervenors filed with Chancellor Kilcrease a motion to intervene in the State's lawsuit. The Perry intervenors sought to challenge the fairness of the settlement and have the order approving it set aside. They also sought declaratory relief regarding the impact of the MSA on their Coffee County suit. Chancellor Kilcrease denied the motion to intervene because the Perry intervenors did not have a protectable legal interest in the State's suit. Therefore, the intervenors were seeking an advisory opinion that would require the court to "indulge in speculation."

The other group of proposed intervenors, the Beckom group, likewise filed a motion with Chancellor Kilcrease to intervene in the State's lawsuit against the tobacco companies. Like the Perry intervenors, the Beckom intervenors sought to challenge the fairness of the MSA. However, unlike the Perry intervenors, the Beckom intervenors sought to have liens imposed on the settlement for attorney's fees incurred in other litigation against tobacco companies.[5] Chancellor Kilcrease denied the motion to intervene based on lack of standing, sovereign immunity, and because the underlying suit filed by the Beckom group on behalf of taxpayers was moot since the State had filed and settled its own suit against the tobacco manufacturers. The trial court also found that a lien for attorney's fees was not proper because the lawyers seeking the fees were not counsel in the State's suit.

After their efforts to intervene failed in the trial courts, the Perry and Beckom intervenors appealed to the Court of Appeals, which consolidated the cases. Thereafter, this Court assumed jurisdiction of the case pursuant to Tenn. Code Ann. § 16-3-201(d) because the case is of compelling public importance which involves a substantial amount of State revenue.

## ANALYSIS
### I.

We first address the trial court's denial of intervenor status to the Perry and Beckom groups. We begin by observing that "a lawsuit often is not merely a private fight and will have implications on those not named as parties." Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1245 (6th Cir. 1997). Believing that the State's settlement with the tobacco industry implicated their interests, the

---

recover for the increase in medical insurance premiums they and thousands of others have purportedly paid from 1953 to the present as a result of the tobacco industry's marketing and sale of tobacco products in Tennessee.

[5]The Beckom intervenors had filed suit in Monroe County against various tobacco companies to recover money spent by the State for smoking-related injuries. The case was removed to federal district court, which dismissed it for lack of standing. The United States Court of Appeals for the Sixth Circuit affirmed the district court decision.

Perry and Beckom groups contend that they are entitled to intervene in the State's lawsuit under Tenn. R. Civ. P. 24, which provides for two types of intervention – intervention as of right and permissive intervention. The applicable rules provide as follows:

> 24.01. <u>Intervention as of Right</u>. – Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) **when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest**, unless the applicant's interest is adequately represented by existing parties; or (3) by stipulation of all the parties. (Emphasis added).

> 24.02. <u>Permissive Intervention</u>. – Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) **when an applicant's claim or defense and the main action have a question of law or fact in common.** In exercising discretion the court shall consider whether or not the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. (Emphasis added).

A party seeking to intervene as of right under Rule 24.01 must establish that (1) the application for intervention was timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the pending litigation; (3) the proposed intervenor's ability to protect that interest is impaired; and (4) the parties to the underlying suit cannot adequately represent the intervenor's interests. <u>Grubbs v. Norris</u>, 870 F.2d 343, 345 (6th Cir. 1989). The intervenor has the burden of establishing all four of these elements or else the motion to intervene will be denied. <u>Id.</u> In the case of permissive intervention, the party seeking to intervene must show that there is a common question of law or fact between the intervenor's claim and the main action. Tenn. R. Civ. P. 24.02. Permissive intervention is generally not proper when the intervenor seeks to raise new claims or issues against the existing parties. <u>See</u> <u>Arizona v. California</u>, 460 U.S. 605, 614 (1983).

The standard of review on appeal for the denial of intervention as of right is de novo, except for the timeliness of the application which is reviewed under an abuse of discretion standard. <u>Michigan State AFL-CIO</u>, 103 F.3d at 1245. The standard of review for the denial of permissive intervention is abuse of discretion. <u>Chaille v. Warren</u>, 635 S.W.2d 700, 703 (Tenn. App. 1982). An abuse of discretion exists when the reviewing court is firmly convinced that the lower court has made a mistake in that it affirmatively appears that the lower court's decision has no basis in law or in fact and is therefore arbitrary, illogical, or unconscionable. <u>See</u> <u>Ballard v. Herzke</u>, 924 S.W.2d 652, 661 (Tenn. 1996); <u>State v. Carter</u>, 890 S.W.2d 449, 454 (Tenn. Crim. App. 1994).

In this case, both groups of would-be intervenors contend that the trial court erred in denying

them the right to intervene under Rule 24.01. In support of their position, the proposed intervenors focus on the possibility that the release provisions of the MSA might be used as a defense in their respective suits against tobacco companies.[6] They argue that they have a substantial legal interest in the State's suit which will be impaired or impeded because the MSA might be raised as a defense in their pending suits if the tobacco defendants interpret the MSA's release provision to encompass the intervenors' claims. The State takes the position that the MSA does not encompass the intervenors' private litigation and, therefore, the MSA has no impact on their ability to pursue their claims against the tobacco companies. Not surprisingly, the tobacco defendants have chosen to take a noncommital position on the issue, which "deeply concerns" the proposed intervenors that the MSA might be used to "stifle or destroy" their pending claims by leaving those claims vulnerable to dismissal. The intervenors are particularly concerned about the language in the MSA purporting to prohibit actions brought by private persons "seeking relief on behalf of or generally applicable to the general public." The MSA, however, does not prohibit suits seeking "private or individual relief for separate and distinct injuries."

The contention of the intervenors that they have a substantial legal interest in the State's suit entitling them to intervene as of right is unconvincing. While the precise nature of the interest required to intervene as of right has eluded exact definition, it is clear that the right does not include a mere contingent, remote, or conjectural possibility of being affected as a result of the suit, but must involve a direct claim on the subject matter of the suit such that the intervenor will either gain or lose by direct operation of the judgment. See 3B Moore's Federal Practice, p. 24-54 (2d ed. 1995); 67A C.J.S. Parties § 75 (1978). Hence, intervention as of right is not appropriate to adjudicate legal interests of an indefinite character, or hypothetical or speculative scenarios that may never come to pass. See Harris v. Pernsley, 820 F.2d 592, 601 (3rd Cir. 1987). In this case, the question of whether the intervenors' claims asserted in their private lawsuits are released by the MSA is an issue that will not arise unless and until the tobacco defendants in those cases raise the MSA as a defense, which they have yet to do. As stated by one court, "[t]he mere possibility that the MSA may some day be offered as a defense is not grounds for intervention. The language of the MSA, in anticipation of separate litigation, contemplates that it may be offered as a complete defense, not that

---

[6]The MSA provides for the release of claims against the tobacco companies by the "Releasing Parties." "Releasing Parties" is defined in the MSA as follows: "Releasing Parties means each Settling State and any of its past, present and future agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, the following: (1) any Settling State's subdivisions . . .; and (2) persons or entities acting in a parens patriae, sovereign, quasi-sovereign, private attorney general, qui tam, taxpayer, or any other capacity, whether or not any of them participate in this settlement, (A) to the extent that any such person or entity is seeking relief on behalf of or generally applicable to the general public in such Settling State or the people of the State, as opposed solely to private or individual relief for separate and distinct injuries, or (B) to the extent that any such entity (as opposed to an individual) is seeking recovery of health care expenses (other than premium or capitation payments for the benefit of present or retired state employees) paid or reimbursed, directly or indirectly, by a Settling State."

it will be a complete defense. At this juncture it cannot be determined if such anticipated defenses may be employed or will be valid." <u>Missouri v. American Tobacco Co.</u>, No. 76054, 2000 WL 29421 (Mo. Ct. App. Jan. 18, 2000). Attempting at this point to decide whether the proposed intervenors will be bound by the MSA, and if so in what respect, would require addressing these questions in the abstract and theoretical. Doing so would run afoul of the established rule that courts are not to render advisory opinions, see <u>Super Flea Mkt. v. Olsen</u>, 677 S.W.2d 449, 451 (Tenn. 1984), or decide abstract legal questions, see <u>Lewis v. State</u>, 347 S.W.2d 47, 49 (Tenn. 1961). The proposed intervenors would have us render an advisory opinion, which we decline to do. We conclude that the intervenors do not have a substantial legal interest in the State's suit entitling them to intervene as of right under Tenn. R. Civ. P. 24.01.

Even assuming for the sake of argument that the intervenors did have a substantial legal interest in the State's suit, intervention as of right under Rule 24.01 would still not be appropriate. As stated above, one of the requirements to intervene as of right is that the would-be intervenor be "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." Tenn. R. Civ. P. 24.01(2). While it may be that at some point the MSA's release provisions will be found to apply to the intervenors' claims if raised as a defense in their cases, the validity of those release provisions and their applicability to the intervenors' claims can be litigated in their other lawsuits. Those lawsuits provide the intervenors with a forum in which to determine whether the MSA creates a defense to their claims. Thus, it cannot be said that the State's settlement of its suit against the tobacco companies will preclude the intervenors from protecting their interests in their private litigation. Accordingly, we find that the proposed intervenors are not entitled to intervention as of right because they do not have a substantial legal interest in the State's suit, and even if they had such an interest, the MSA does not impair or impede their ability to protect that interest.

On the question of permissive intervention under Tenn. R. Civ. P. 24.02, we find no abuse of discretion in the trial court's denial of intervention. As noted above, if an intervenor's claim or defense contains a question of law or fact that is also raised by the main action, the requirement of Rule 24.02 is satisfied and the trial court is afforded discretion to permit intervention. <u>Ballard</u>, 924 S.W.2d at 657. In exercising that discretion, the court must consider whether the intervention will unduly delay or otherwise prejudice the rights of the original parties. Tenn. R. Civ. P. 24.02. Here, it cannot be said that the trial court's denial of permissive intervention had no basis in law or fact or was otherwise arbitrary, illogical, or unconscionable, given that the proposed intervenors have a forum to determine the impact of the MSA on their cases. Furthermore, asking the trial court in the State's suit to determine the impact of the MSA on the intervenors' cases would be speculative since the MSA has not been raised as a defense to the intervenors' claims. Finally, the extent to which the MSA's release provisions bind private litigants is not an issue in the State's case. Nor is it presently an issue in the intervenors' cases. Thus, the trial court acted properly in rejecting the intervenors' motions for permissive intervention under Rule 24.02.

## II.

In addition to filing a motion to intervene, the Perry intervenors filed a declaratory judgment action in which they sought to have their rights under the MSA determined. Specifically, the Perry

intervenors sought a declaration that the MSA did not impair their ability to pursue their action against the tobacco defendants. Chancellor McCoy dismissed the declaratory judgment action on the basis of sovereign immunity, res judicata, and her determination that the intervenors were seeking an advisory opinion regarding the impact of the MSA on their private lawsuit.

A decision on whether to entertain a declaratory judgment falls squarely within a trial court's discretion, which has been described by this Court as "very wide." Southern Fire & Cas. Co. v. Cooper, 292 S.W.2d 177, 178 (Tenn. 1956); Hinchman v. City Water Co., 167 S.W.2d 986, 992 (Tenn. 1943); Newsum v. Interstate Realty Co., 278 S.W. 56, 57 (Tenn. 1925). Thus, the issue here is whether the trial court acted arbitrarily in refusing to declare the rights of the Perry intervenors under the MSA. See Southern Fire & Cas. Co., 292 S.W.2d at 178 ( "the action of the trial court in refusing a declaration should not be disturbed by this, an appellate court, unless such refusal be arbitrary").

The primary purpose of the Declaratory Judgment Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations . . . ." Tenn. Code Ann. § 29-14-113. Although the Act is "to be liberally construed and administered," id., we have acknowledged that "certain limitations must be placed upon the operation of the statute." Johnson City v. Caplan, 253 S.W.2d 725, 726 (Tenn. 1952). For example, a declaratory judgment action cannot be used by a court to decide a theoretical question, Miller v. Miller, 261 S.W. 965, 972 (Tenn. 1924), render an advisory opinion which may help a party in another transaction, Hodges v. Hamblen County, 277 S.W. 901, 902 (Tenn. 1925), or "allay fears as to what may occur in the future," Super Flea Mkt., 677 S.W.2d at 451. Thus, in order to maintain an action for a declaratory judgment a justiciable controversy must exist. Jared v. Fitzgerald, 195 S.W.2d 1, 4 (Tenn. 1946). For a controversy to be justiciable, a real question rather than a theoretical one must be presented and a legally protectable interest must be at stake. Cummings v. Beeler, 223 S.W.2d 913, 915 (Tenn. 1949). If the controversy depends upon a future or contingent event, or involves a theoretical or hypothetical state of facts, the controversy is not justiciable. Story v. Walker, 404 S.W.2d 803, 804 (Tenn. 1966). If the rule were otherwise, the "courts might well be projected into the limitless field of advisory opinions." Id.

In this case, the Perry intervenors seek a declaration as to whether the MSA's release provisions affect their private suit pending in Coffee County. As previously pointed out, the MSA has not yet been raised as an issue in that case. The issue will arise and be justiciable, if at all, when the tobacco companies assert the affirmative defense of release in the Coffee County case. Therefore, the trial court did not act arbitrarily in declining to render a declaratory opinion to assist the intervenors in their other litigation or otherwise allay their fears as to what might occur in the future. The dismissal of the declaratory judgment action was entirely proper.

### III.

The final issue in this case involves the claim of the Beckom intervenors to attorney's fees. The Beckom intervenors are composed in part of lawyers who claim to have spent millions of dollars fighting the tobacco industry in other cases in Tennessee and elsewhere. These lawyers seek to have liens imposed on the MSA for attorney's fees incurred as a result of their work against the tobacco

-8-

companies, claiming that the State benefitted from their past efforts. They argue that since the tobacco companies agreed to pay the State's attorney's fees in its suit against them under the MSA, this entitles the intervenors to receive from the tobacco companies the attorney's fees generated by their prior litigation. They further contend that they are owed attorney's fees based on a theory of implied contract and other equitable theories. The trial court found that a lien for attorney's fees was not proper because the lawyers seeking the fees were not counsel in the State's suit. We agree.

Pursuant to the terms of the MSA, the tobacco companies agreed to pay attorney's fees to "private outside counsel, if any, retained by" the State, and who were identified in the MSA "as having been retained by and having represented" the State. Thus, only attorneys hired by the State and identified by the State in the MSA can make a claim for attorney's fees under the MSA. The attorneys seeking to intervene here were not hired by the State to represent it, did not in fact represent the State in its suit, and are not designated in the MSA as having done so. Thus, they clearly have no claim to attorney's fees under the MSA. Similarly unpersuasive is the intervenors' claim to attorney's fees on equitable grounds, such as quantum meruit, implied contract, and other theories. If the attorney intervenors in this case were allowed to claim fees under the theories being asserted, then any lawyer who has been involved in litigation against a tobacco company could do the same by merely claiming that their efforts have benefitted the State. Obviously, such a situation cannot be sanctioned. Accordingly, we find that the intervenors' claim to attorney's fees is controlled by the American Rule, which is firmly established in this state. See John Kohl & Co. v. Dearborn & Ewing, 977 S.W.2d 528, 534 (Tenn. 1998). Under that rule, litigants pay their own attorney's fees absent a statute or an agreement providing otherwise. Id. It follows that the trial court properly refused to permit those individuals seeking attorney's fees to intervene in this case.

## CONCLUSION

In view of the foregoing discussion, we conclude that the trial court properly denied the motions to intervene and that the Perry intervenors' declaratory judgment action was properly dismissed. We have carefully considered the other claims of error made by the would-be intervenors and find them to be without any merit.[7] Accordingly, the judgments of the trial courts are affirmed. Finally, we deny the intervenors' motions to consider post-judgment facts.[8] Costs of this appeal

---

[7]Both groups of proposed intervenors, particularly the Beckom group, attempt to make much of the fact that Chancellor Kilcrease stated at a hearing that he had not read the MSA before approving it and was therefore unfamiliar with its provisions. The proposed intervenors fail to note, however, that the Chancellor stated at a later hearing that he wanted "to correct the record right now about that," stating that he had in fact read the MSA and that his earlier comment about not reading it was made in jest and taken out of context. We assume that counsels' omission in this regard is the result of oversight rather than any attempt to mislead the Court.

[8]The Perry intervenors filed a motion pursuant to Tenn. R. App. P. 14 asking this Court to consider a laches argument made by the State in a case pending in federal court where an individual was seeking to intervene in that case. The motion does not request that we consider a post-judgment fact, but merely a legal position taken by the State in another case, which we decline to do. Laches

shall be taxed evenly between the Perry and Beckom intervenors.

---

is not even an issue in the present case. The Beckom intervenors likewise filed a motion to consider the purported post-judgment fact that the MSA had been amended after its approval to designate an out of state lawyer as one who provided legal services to the State and could therefore recover attorney's fees. The motion is moot given our resolution of the case. In any event, the motion does not meet the criteria of Tenn. R. App. P. 14 for the consideration of post-judgment facts. The Beckom intervenors have filed other motions to consider post-judgment facts which we have considered and hereby deny.