# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
November 20, 2014 Session

## IN RE BRIAN M, ET. AL.[1]

### Appeal from the Juvenile Court for Knox County
### No. 71148    Hon. Timothy E. Irwin, Judge

---

### No. E2014-00941-COA-R3-PT-FILED-JANUARY 6, 2015

---

This is a termination of parental rights appeal brought by the incarcerated father. The trial court found clear and convincing evidence to support termination of the father's parental rights on the statutory grounds of abandonment and confinement under a sentence of ten years or more. The court further found that termination of the father's parental rights was in the best interest of the children. The father appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

James E. Corcoran, III, Knoxville, Tennessee, for the appellant, Brian M.

Linda C. Cole, Knoxville, Tennessee, for the appellees, Percy L. and Rosina L.

Robert E. Cooper, Jr., Attorney General and Reporter, and Paul Jordan Scott, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

Kelly A. Wojciechowski, Maryville, Tennessee, guardian ad litem for the minor children, Brian M. and Brianna M.

---

[1]This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

**OPINION**

**I. BACKGROUND**

Brian M. and Brianna M. (collectively "the Children") were born to Rebecca L. ("Mother") and Brian M. ("Father") in September of 2011. The Children, twins, were born premature at 24 weeks and remained in the hospital for approximately six months after their birth. The Children continued to have medical issues due to their premature age.

On March 5, 2012, Father was arrested after he was found with two bags of cocaine and a handgun. Father later entered guilty pleas to possession of cocaine with intent to sell, a Class B felony, and possession of a firearm during the commission of a felony, a Class D felony. He received a sentence of eight years for the Class B felony and a consecutive sentence of three years for the Class D felony, for a total effective sentence of 11 years in the Department of Correction.

Two months later, the Tennessee Department of Children's Services ("DCS") removed the Children from Mother's care after receiving a "report of harm due to [Mother's] substance abuse issues . . . and the [C]hildren's medically fragile condition." Mother tested positive for "benzodiazepines, oxycodone, opiates, and marijuana." The Children were placed in a medically fragile foster home because Father was unable to care for the Children due to his incarceration.

Approximately four months later, the paternal grandparents, Percy L. ("Grandfather") and Rosina L. ("Grandmother") (collectively "Grandparents"), filed a petition for custody of the Children. Grandparents are residents of Georgia. Shortly thereafter, the court entered an agreed order, finding the Children dependent and neglected and directing the State of Georgia to complete a home study for Grandparents pursuant to the Interstate Compact for the Placement of Children ("ICPC"). The trial court later denied the petition for custody after learning that Grandparents' home was not approved pursuant to the ICPC because their employment required extensive travel that was not conducive to caring for the medically fragile children. The court advised Grandparents that their petition would remain "open for the indefinite future" and that they were "free to pursue whatever course of action they desire[d] with regard to the ICPC denial."

On September 16, 2013, DCS filed a petition to terminate Father's parental rights, alleging that termination of his parental rights was appropriate based upon his wanton disregard of the Children's welfare and his incarceration pursuant to Tennessee Code

Annotated section 36-1-113(g)(6).[2]  Four months later, Grandparents filed a motion to intervene and a corresponding motion to continue the termination proceeding until a second home study could be completed.  Likewise, Father also filed a motion, requesting the court to grant the custody petition and to allow Grandparents' intervention in the termination proceeding.  In the alternative, Father sought a stay of the termination proceeding to pursue an interlocutory appeal regarding the applicability of the ICPC to a relative placement.

A hearing was held on the motions filed by Grandparents and Father.  The trial court denied the motion to intervene, finding that the grandparent relationship did not "support intervention as of right in a termination of parental rights case, particularly where delay is to be avoided."  The court noted that Father supported Grandparents' pursuit of custody and was in a position to represent their interest in the termination proceeding.  The court also denied the alternative motion to stay the termination proceeding, finding that the ICPC was applicable to the custody case.  Father joined with the motion to continue the termination proceeding, and the court accepted proof on the motion.

Grandmother testified that she and Grandfather currently live in Atlanta, Georgia and were both employed in the medical field as nurses.  She stated that her employment required her to travel to California on a frequent basis.  She recalled that she had prepared rooms for the Children in her home, a six-bedroom, 4-bath residence, and asserted that her residence was appropriate for the Children.  She acknowledged that she was ultimately denied as a placement for the Children because of her employment.  She asserted that if she were approved as a placement and given custody of the Children, she would accept employment with a local home-health agency, allowing her to remain in Georgia.  She claimed that her mother and aunt agreed to care for the Children while she worked.  She conceded that neither her mother nor her aunt had met the Children.  She related that she was familiar with the Children's unique medical needs and that her employment provided her with the medical background necessary to care for the Children.  She acknowledged that she had only visited the Children twice since the time of removal and that Grandfather had not visited the Children.  She claimed that if given the chance, she would bond with the Children and provide a suitable home.

Citing the Children's need for permanency, the court denied the motion to continue and began the hearing on the termination petition.  DCS submitted certified copies of Father's criminal convictions, including his convictions for theft, a Class E misdemeanor, and aggravated assault, a Class A misdemeanor, arising from an altercation he had with Mother on October 18, 2010, approximately 11 months before the Children were born.  DCS

---

[2]Mother voluntarily surrendered her parental rights to the Children and is not a party to this appeal.

-3-

also submitted certified copies of Father's felony criminal convictions that resulted in his 11-year sentence in the Department of Correction.

David Potter testified that he is employed by DCS and was assigned to the Children's case. He recalled that the Children were born premature at 24 weeks and were not released from the hospital until they were approximately six months old. He asserted that the Children resided with Mother for approximately two months until they were removed by DCS. He related that Father had been incarcerated since the time of removal. He claimed that the Children were doing well and had remained together in the same foster home since the time of removal. He stated that Brian was able to walk, while Brianna was taking steps with assistance. He related that they had improved by "leaps and bounds" since the time of removal.

Foster Mother testified that the Children lived with her and her husband and daughter, who was six years old at the time of the hearing. She related that her daughter interacted well with the Children and that she and her husband intended to adopt the Children. She asserted that she loved the Children and was willing to care for each child's unique medical needs. She related that Brian suffered from intellectual development issues, namely he was unable to talk, continually grunted, threw "temper-tantrums," routinely banged his head on hard surfaces, and suffered from separation anxiety. She doubted his ability to progress in an academic setting. She also stated that he was unable to eat solid foods. She asserted that Brianna was "very bright" even though she still had a limited vocabulary. She stated that Brianna was able to chew solid foods but still required the use of a gastrostomy tube at night. She related that Brianna was able to walk with assistance and would "scoot around' without assistance. She claimed that Brianna would likely remain in a wheelchair because of muscle deficiency. She opined that Brianna handled her frustration by screaming, biting, or smacking and also suffered from separation anxiety. She related that the Children each routinely visited numerous doctors for their respective medical needs.

Father testified that he thought the Children should be placed with his mother, who had never mistreated him. He claimed that Mr. Potter did not provide any assistance with DCS services and simply instructed him that his rights would be terminated if he received a sentence in excess of ten years.

Following the presentation of the above evidence, the trial court terminated Father's parental rights on the statutory grounds of abandonment for wanton disregard of the Children's welfare and confinement under a sentence of ten years or more pursuant to Tennessee Code Annotated section 36-1-113(g)(6). The court further held that termination of Father's parental rights was in the best interest of the Children. Father filed a timely notice of appeal.

## II. ISSUES

We restate the issues raised on appeal as follows:

A.     Whether the trial court erred in denying the motion to intervene in the termination proceeding.

B.     Whether the trial court erred in denying the motion to continue the termination proceeding until a second home study could be completed.

C.     Whether clear and convincing evidence supports the trial court's ruling that termination of Father's parental rights was in the best interest of the Children pursuant to Tennessee Code Annotated section 36-1-113(i).

## III. DISCUSSION

### A.

Father argues that the trial court erred in denying the motion to intervene when Grandparents had a substantial legal interest in the proceeding because they sought custody of the Children. He notes that once his parental rights were terminated, DCS obtained the ability to consent to the foster parents' adoption of the Children, thereby rendering the custody petition moot. DCS responds that Grandparents did not have a substantial legal interest in the proceeding to warrant intervention when Grandparents had already obtained a hearing on their custody petition and when Father adequately represented their interest in the termination proceeding. DCS notes that permissive intervention was also inappropriate because intervention would have caused unnecessary delay and confusion of the issues pertinent to the termination proceeding.

"For denial of intervention as of right (for a reason other than the timeliness of the application), review is de novo." *Gonzalez v. State Dep't of Children's Servs.*, 136 S.W.3d 613, 616 (Tenn. 2004) (citing *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000)). The factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however,

appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

Intervention as of right is governed by Rule 24.01 of the Tennessee Rules of Civil Procedure, which provides,

> Upon timely application anyone shall be permitted to intervene in an action: (1) When a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties; or (3) by stipulation of all the parties.

There are essentially four elements that a party seeking to intervene as of right must establish before an application for intervention will be granted. *Brown*, 18 S.W.3d at 190-91. The party must show that: "(1) the application for intervention was timely; (2) [he or she had] a substantial legal interest in the subject matter of the pending litigation; (3) [the] ability to protect that interest is impaired; and (4) the parties to the underlying suit cannot adequately represent [that] interest[]." *Id.* While the precise nature of the interest required to intervene as of right has eluded exact definition, it is clear that the right does not include a mere contingent, remote, or conjectural possibility of being affected as a result of the suit, but must involve a direct claim on the subject matter of the suit such that the intervenor will either gain or lose by direct operation of the judgment." *Id.* at 192.

Here, the application for intervention was timely. However, Grandparents did not have a substantial legal interest in the proceeding to warrant intervention when their relationship alone did not support intervention. *See Gonzalez*, 136 S.W.3d at 620. The pending custody petition also did not warrant intervention when Father was capable of adequately representing their interest in the termination proceeding. The parties and the court were apprised of the situation regarding Grandparents' desire to adopt the Children. Indeed, Father testified to that fact during the proceeding. With these considerations in mind, we conclude that the trial court did not err in denying the motion to intervene pursuant to Rule 24.01 of the Tennessee Rules of Civil Procedure.

This conclusion does not end our inquiry because the court's denial of the motion may have been contrary to the rule providing for permissive intervention. Rule 24.02 of the Tennessee Rules of Civil Procedure provides,

Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. *In exercising discretion* the court shall consider whether or not the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

(Emphasis added).

The proceedings admittedly had a question of law or fact in common, namely the best interest of the Children. However, the best interest analysis is vastly different in each proceeding. In a termination proceeding, the court is specifically tasked with considering whether the termination of parental rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c). The current placement of the child is also a consideration in the best interest analysis; however, it is but one factor that is considered by the trial court. Tenn. Code Ann. § 36-1-113(i). Despite the commonalities in the proceedings, the court was also required to consider whether the intervention would unduly delay or prejudice the original proceeding. Here, the Children had languished in custody for two years, while Grandparents obtained a hearing on their custody petition but failed to remedy the conditions that hindered placement. With these considerations in mind, we conclude that Grandparents' request for intervention was also not supported by Rule 24.02 of the Tennessee Rules of Civil Procedure.

B.

As a threshold issue, Father argues that the ICPC did not apply to Grandparents' request for custody. DCS responds that the court had a duty to ensure that placement with Grandparents was suitable pursuant to the ICPC before granting the custody petition. The ICPC defines placement as follows:

[T]he arrangement for the care of a child in a family free or boarding home or in a child-caring agency or institution but does not include any institution caring for the mentally ill, mentally defective or epileptic or any institution primarily educational in character, and any hospital or other medical facility[.]

Tenn. Code Ann. § 37-4-201. Article VIII of the ICPC further provides that the compact shall not apply to:

(a) The sending or bringing of a child into a receiving state by the child's parent, stepparent, grandparent, adult brother or sister, adult uncle or aunt,

or the child's guardian and leaving the child with any such relative or non-agency guardian in the receiving state.

Tenn. Code Ann. § 37-4-201. Citing *New Jersey DYFS v. K.F.*, 803 A.2d 721 (N.J. Super Ct. App. Div 2002) and *McComb v. Wambaugh*, 934 F.2d 474 (3d Cir. 1991), Father argues that the court unnecessarily awaited the results of the ICPC study before ruling on the custody petition. While the cited cases provide persuasive authority, they are not binding on this court. Moreover, the facts presented in *K.F.* and *McComb* are distinguishable from the circumstances presented in this case.

In *K.F.*, the court held that the ICPC "did not require the prior approval of the receiving state when a court in this state has decided against foster care in favor of placing children with their out-of-state maternal grandparents." 803 A.2d at 728-29. In so holding, the court noted that the trial court possessed "adequate information before ordering the placement" and granting the petition for custody. *Id.* In *McComb*, the court found that the ICPC did not apply when "a child is returned by the sending state to a natural parent residing in another state." 934 F.2d at 482. The question presented in *McComb* was whether the ICPC created a special relationship between the minor child and the receiving state. *Id.*

In this case, the trial court had not relinquished DCS of its involvement or ruled against foster home placement. The court was also not returning the Children to their natural parent that happened to reside in another state. The court simply sought assistance pursuant to the ICPC to obtain the necessary information to render an informed decision on the custody petition. Under these circumstances, we conclude that the trial court did not err in finding that the ICPC was applicable and in declining to rule upon the custody petition until the second ICPC study was completed.

Relative to the denial of the motion to continue, Father argues that the trial court abused its discretion in denying the motion because the custody petition was still pending at the time of the termination proceeding. DCS responds that the trial court did not abuse its discretion in denying the motion when the custody petition had no bearing on the termination proceeding and when the court had a duty to ensure that the termination proceeding was not delayed any longer than necessary.

"This court reviews a trial court's decision to deny a motion for a continuance under the abuse of discretion standard of review." *In re A'Mari B.*, 358 S.W.3d 204, 213 (Tenn. Ct. App. 2011) (citing *State Dep't of Children's Servs. v. V.N.*, 279 S.W.3d 306, 317 (Tenn. Ct. App. 2008)). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice

to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

The custody petition was filed on October 3, 2012, while the termination proceeding was set to begin on April 11, 2014. Accordingly, Grandparents were given approximately 18 months to ready themselves for the responsibility of caring for the Children. At the time of the hearing, Grandmother conceded that she had not yet obtained employment that would allow her to care for the Children on a permanent basis. Grandparents had also failed to establish a relationship with the Children. Indeed, Grandfather never visited the Children, while Grandmother had only visited the Children twice since the time of removal. With these considerations in mind, we conclude that the trial court did not abuse its discretion in denying the motion for a continuance.

C.

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) [t]hat termination of the parent's or guardian's rights is in the best interest
[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2010, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

A reviewing court must review the trial court's findings of fact de novo with a presumption of correctness under [Rule 13(d) of the Tennessee Rules of Appellate Procedure]. *See In re Adoption of A.M.H.*, 215 S.W.3d [793,] 809 [(Tenn. 2007)]. In light of the heightened burden of proof in proceedings under [Tennessee Code Annotated section] 36-1-113, the reviewing court must then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim. *State Dep't of Children's Servs. v. Mims*, 285 S.W.3d [435,] 447-48 [(Tenn. Ct. App. 2008)]; *In re Giorgianna H.*, 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re S.M.*, 149 S.W.3d 632, 640 n. 13 (Tenn. Ct. App. 2004). Appellate courts conduct a de novo review of the trial court's decisions regarding questions of law in termination proceedings. However, these decisions, unlike the trial court's findings of fact, are not presumed to be

-10-

correct. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)]; *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

*In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010).

In this case, Father does not challenge the trial court's ruling concerning the statutory grounds for termination. Although we have reviewed the record and the proof presented therein, we will not discuss these issues. It suffices us to say that this court is satisfied that the trial court's ruling as to the statutory grounds for termination is supported by clear and convincing evidence. Having concluded that there was clear and convincing evidence supporting the statutory grounds to terminate Father's parental rights, we must consider whether termination of Father's parental rights was in the best interest of the Children. In making this determination, we are guided by the following non-exhaustive list of factors:

(i) In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[3]

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological

---

[3]DCS was relieved of reasonable efforts due to Father's incarceration.

abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

A number of the best interest factors weigh against Father due to his incarceration, namely he was unable to provide a stable home, he had not visited the Children, he had not maintained a meaningful relationship with the Children, and he had not paid child support consistent with the child support guidelines. Tenn. Code Ann. § 36-1-113(i)(1), (3), (4), (7), (9). Additionally, the Children reside in a safe and stable foster home that expressed a desire to adopt them. Removing the Children would likely traumatize them. Tenn. Code Ann. § 36-1-113(i)(5). The record also reflects that Father abused Mother before the Children were born. Tenn. Code Ann. § 36-1-113(i)(6).

Father takes issue with DCS's failure to place the Children with Grandparents. We do not wish to discount Father's love for the Children or his understandable desire to place them with relatives. However, the Children have languished in custody for far too long while Grandparents failed to address the concerns that hindered their efforts to gain custody. The Children should be given the opportunity to continue to thrive in their adoptive placement that is capable of addressing their unique medical needs. With all of the above

considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Children. Accordingly, we affirm the decision of the trial court.

## IV. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Brian M.


_____
JOHN W. McCLARTY, JUDGE