IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 9, 2024 Session

## VINCENT STORMES v. FF PROPERTY HOLDINGS, LLC

**Appeal from the Chancery Court for Sevier County**
**No. 23-3-066        James H. Ripley, Chancellor**

———————————————————

**No. E2023-01430-COA-R3-CV**

———————————————————

This is a breach of contract action involving the sale of real property in which the plaintiff seller alleged that the defendant buyer withdrew from the sale in violation of the terms of the contract.  The trial court granted summary judgment in favor of the plaintiff.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and KRISTI M. DAVIS, J., joined.

W. Tyler Chastain and Jacob L. Gilliam, Knoxville, Tennessee, for the appellant, FF Property Holdings, LLC.

Scott D. Hall, Sevierville, Tennessee, for the appellee, Vincent Stormes.

## OPINION

### I.        BACKGROUND

The real property at issue is located in Sevierville, Tennessee.  Prior to the agreement, Vincent Stormes ("Seller") rented the property as three small units through Airbnb before marketing the property for sale for $550,000.  In January 2023, a real estate investment company, FF Property Holdings, LLC ("Buyer"), visited the property and the three rental units with the intent to submit an offer for the property.  Seller provided Buyer with the financial statements for the three units.  The parties then entered into negotiations, after which Buyer indicated its intent to purchase the property in cash and agreed to waive all financial or appraisal contingencies.  On January 19, 2023, Buyer executed a purchase and sale agreement in the amount of $625,000.  The agreement provided Buyer with a 30-day due diligence period to inspect the property.

During that time, Buyer reviewed the records and the surrounding rental market to determine the financial feasibility of closing the transaction and purchasing the property. Buyer did not physically inspect the property at issue during the 30-day inspection period. Buyer ultimately decided that the transaction was not financially viable and indicated its intent to terminate the agreement. Buyer executed a form notification indicating the intent to terminate the agreement based upon (1) a failure to obtain financing and (2) the general right to terminate following the inspection period.[1]

Seller objected, claiming that Buyer had waived all financial contingencies pursuant to the terms of the agreement. Seller demanded payment, and Buyer refused. Seller ultimately sold the property to a third party for $575,000. Seller then filed this action on March 16, 2023, requesting damages in the amount of $50,000, the difference between Buyer's agreed upon purchase price and the actual sale price, plus attorney fees. Seller later amended its request for damages, providing that the fair market value of the property at the time of the agreement was $550,000, thereby establishing a primary damage element of $75,000, plus attorney fees and costs.

Buyer denied wrongdoing, citing the inspection period in the agreement, which provided Buyer with 30 days to inspect the property and either (a) terminate the agreement by providing a list of specified objections or (b) accept the property "as is." Buyer asserted that "the home lacked permitting for septic, no clear delineation that the home could support a septic system for rental purposes, and had various defects/repairs with the home which all required substantial financial costs that were not known or could have been known prior to the due diligence inspection."

Seller moved for summary judgment, arguing that no genuine issues of material fact remained when Buyer agreed to waive all financial contingencies. Buyer opposed the motion for summary judgment, asserting that the agreement provided a 30-day due diligence period, after which Buyer was permitted to terminate the agreement.

Following the hearing, the court granted summary judgment in favor of Seller, finding that termination based upon the financial feasibility of the property was not permitted pursuant to the terms of the agreement. The court reasoned that a "financial feasibility study or evaluation is, in effect, an appraisal," which Buyer expressly waived. The court awarded judgment to Seller in the amount of $75,000, plus attorney fees and costs. This appeal followed.

---

[1] Buyer has maintained throughout that it erroneously marked the box failure to obtain financing in support of the notice of termination.

## II.   ISSUES

We consolidate and restate the dispositive issues on appeal as follows:

A.   Whether the trial court erred in its interpretation of the agreement.

B.   Whether Seller is entitled to an award of attorney fees at trial and now on appeal.


## III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must either submit evidence "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).

When a party files and properly supports a motion for summary judgment as provided in Rule 56, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting Tenn. R. Civ. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." Tenn. R. Civ. P. 56.06.

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye*, 477 S.W.3d at 250. Therefore, "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* In reviewing a summary judgment motion on appeal, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 S.W.3d 726, 733 (Tenn. Ct. App. 2019) (citations and quotations omitted).

## IV.    DISCUSSION

### A.

Buyer does not dispute the trial court's calculation of damages.  Buyer takes issue with the trial court's interpretation of the agreement.  Buyer asserts that genuine issues of material fact remained regarding whether Buyer held the right to terminate the agreement following the inspection period and whether Buyer was precluded from conducting a financial feasibility study due to its waiver of the financing purchase contingency.  Our Supreme Court explained the principles of contract interpretation as follows:

> The interpretation of a contract is a matter of law and therefore is reviewed de novo. *See Hamblen Cnty. v. City of Morristown*, 656 S.W.2d 331, 335–36 (Tenn. 1983).  "When resolving disputes concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language."  *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).  If a contract's language is clear and unambiguous, then the literal meaning of the language controls the outcome of the contract dispute.  *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002).  Additionally, "all provisions in the contract should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract."  *Guiliano*, 995 S.W.2d at 95.

*Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 342 (Tenn. 2005).  "[T]he strong strain of textualism in Tennessee caselaw demonstrates resolve to keep the written words as the lodestar of contract interpretation."  *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019).  We "'give primacy to the contract terms, because the words are the most reliable indicator—and the best evidence—of the parties' agreement when relations were harmonious, and where the parties were not jockeying for advantage in a contract dispute.'"  *Id.* (quoting Feldman, 21 Tenn. Practice § 8:14).

Buyer argues that its rental income evaluation was akin to the physical inspection of the property.  The agreement provided Buyer with the right to make inspections with a licensed home inspector.  The agreement also provided:

> [N]othing in this section shall preclude Buyer from conducting any inspections on his/her own behalf, nor shall it preclude Buyer from retaining a qualified (and if not required by law, licensed) professional to conduct inspections of particular systems or issues within such professional's expertise or licensure, including but not limited to its inspection of the heating/cooling systems, electrical systems, foundation, etc.[.]

**Initial Inspections**. Buyer and/or his inspectors/representatives shall have the right and responsibility to enter the Property during normal business hours, for the purpose of making inspections and/or tests of the Property. Buyer and/or his inspectors/representatives shall have the right to perform a visual analysis of the condition of the Property, any reasonably accessible installed components, the operation of the Property's systems, including any controls normally operated by Seller including the following components: heating systems, cooling systems, electrical systems, plumbing systems, structural components, foundations, roof coverings, exterior and interior components, any other site aspects that affect the Property, and environmental issues (e.g., radon, mold, asbestos, etc.).

The parties agreed to a 30-day inspection period, during which Buyer was tasked with conducting "any inspection provided for herein, including but not limited to" a wood destroying insect inspection report. After the 30-day period, Buyer was tasked with providing either one of the following two notices:[2]

(1) In consideration of Buyer having conducted Buyer's good faith inspections as provided for herein, the sufficiency of such consideration being hereby acknowledged, Buyer shall furnish Seller with a list of written specified objections and immediately terminate this Agreement via the Notification form or equivalent written notice. . . .

OR

(2) Accept the Property in its present "AS IS" condition with any and all faults and no warranties expressed or implied via the Notification form or equivalent written notice. Seller has no obligations to make repairs.

While Buyer certainly held the right to inspect the property and even perform a financial feasibility study, the agreement specifically provided that "Buyer's obligation to close shall not be subject to *any* financial contingency." (Emphasis added.). Buyer did not provide Seller with a list of written specified objections pertaining to the condition of the property in support of its initial notice of termination. We agree with the trial court that the grounds stated in the notification were not a valid basis for termination of the contract. With these considerations in mind, we affirm the trial court's grant of summary judgment.

---

[2] The parties specifically waived the inclusion of a third notice providing for a resolution period.

B.

Buyer asserts that the award of attorney fees at the trial court level must be reversed upon this court's reversal of the grant of summary judgment. Tennessee follows the American Rule which provides that "litigants pay their own attorney[] fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). Here, the agreement provided for the recovery of reasonable attorney fees to the prevailing party in a suit for breach or enforcement of the agreement. The trial court awarded reasonable attorney fees based upon these terms to Seller. Having affirmed the trial court's grant of summary judgment, we likewise uphold the attorney fee award.

At the conclusion of the brief, Seller seeks to recover its attorney fees on appeal "as called for under [the agreement]." However, this request was not presented in a statement of issues or supported by argument in the brief. A request for attorney fees on appeal is waived if not included in the statement of issues. *See Keeble v. Keeble*, No. E2019-01168-COA-R3-CV, 2020 WL 2897277, at *4 (Tenn. Ct. App. June 3, 2020) (citing *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 410–11 (Tenn. 2006)). Accordingly, Seller's request for attorney fees on appeal is waived.

V.     CONCLUSION

For the reasons stated above, we affirm the decision of the trial court. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, FF Property Holdings, LLC.

_____
JOHN W. MCCLARTY, JUDGE