# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs May 20, 2015

## S. A. M. D. v. J. P. D.

### Appeal from the Circuit Court for Shelby County
### No. CT00543806, CT00150214    Donna M. Fields, Judge

_____

### No. W2014-01015-COA-R3-CV – Filed June 23, 2015
_____

This is a post-divorce action. The trial court denied Wife's motion to continue, found that she breached the parties' marital dissolution agreement, and credited Husband for amounts he paid for necessaries when calculating Husband's child support arrearage. Wife appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

Kimberly Falls Lentz, Memphis, Tennessee, for the appellant, S.A.M.D.

Vickie Hardy Jones, Memphis, Tennessee, for the appellee, J.P.D.

## MEMORANDUM OPINION[1]

The parties[2] have engaged in post-divorce litigation almost continually since the trial court entered their final decree of divorce in February 2010, and this is the third time their post-divorce disputes have been before this Court. We accordingly find it

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] The record in this matter was sealed by the trial court. We accordingly substitute initials for the parties' names in this Opinion.

unnecessary to restate the background facts and procedural history of this matter. In the present appeal, Wife submits that the trial court erred by denying her May 2014 motion to continue the hearing of Husband's April 2014 petition for breach of contract; by finding that Wife breached the parties' marital dissolution agreement ("MDA") by failing to pay the mortgage and other expenses associated with real property that secured a mortgage held by Husband; and by ordering her to quitclaim the real property back to Husband, which the trial court ordered in order to offset the judgment in favor of Husband on his breach of contract claim. Wife also appeals the trial court's assignment of a credit to Husband against child support amounts due to Wife following our order of remand of the parties' prior appeal. Husband requests attorney's fees on appeal. We affirm the trial court's judgment in full and deny Husband's request for attorney's fees.

### Breach of Contract

We first turn to Wife's assertion that the trial court erred by finding that she breached the parties' MDA by failing to pay the mortgage and other expenses associated with the real property known as the "Windgarden Residence." Whether a party has breached a contract is a question of fact. *Edmunds v. Delta Partners, LLC*, 403 S.W.3d 812, 822 (Tenn. Ct. App. 2012). In an action tried by a trial court sitting without a jury, our review of the trial court's findings of fact is *de novo* on the record with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Edmunds*, 403 S.W.3d at 821-822.

Husband filed the petition at issue in the current appeal on April 3, 2014. His petition was styled: "Complaint for Breach of Contract, for Money Judgment, For Transfer of Real Property, and for Attorney's Fees."[3] In his complaint, Husband referenced the trial court's March 2014 order on Husband's July 2012 "Petition for Order Requiring Sale of Real Property." In its order, which the trial court entered *nunc pro tunc* to July 26, 2013, the trial court stated:

---

[3] Wife asserts Husband's complaint was 117 pages in length. We observe that the complaint itself is seven pages in length and that it includes several exhibits, including the parties' MDA and earlier orders of the trial court. Wife also asserts in her brief that, following a hearing in February 2014, in March 2014 the trial court set "multiple matters for hearing to include a Petition that Counsel for [Husband] indicated would be filed at some point in the future relative to the Windgarden property[,]" and that the trial court's order setting the matters for a hearing "failed to show any acknowledgment, notice and/or certificate of service to [Wife]." It appears undisputed, however, that Wife was present when the court made its oral ruling and that Wife's attorney signed the order. Further, Wife did not raise notice as an issue in the Statement of the Issues section of her brief. "Issues not raised in the statement of the issues may be considered waived." *Ethridge v. Estate of Ethridge*, 427 S.W.3d 389, 395 (Tenn. Ct. App. 2013).

Father has requested that this Court enter an order requiring the Windgarden Residence to be listed for sale immediately. Although Mother has stipulated that this Court has subject matter jurisdiction over the issues presented by Father's petition for the sale of the Windgarden Residence, the Court finds that it lacks jurisdiction to order the sale of the Windgarden Residence under the terms of the Marital Dissolution Agreement and in the absence of a breach of the terms of the Marital Dissolution Agreement by Mother. Should Mother fail to pay the obligations associated with the Windgarden Residence, including the mortgage note on which only Father is obligated, Father may file an independent action for breach of contract, seeking the sale of the Windgarden Residence or other relief. Should Father do so, this Court finds that such matter should be assigned by the clerk of the court to this division, this Court being familiar with the parties, the facts and the circumstances of this case.

Husband additionally referenced the trial court's July 26, 2013, order finding that the parties' son had not resided in the Windgarden Residence since December 2010 and that, under the parties' MDA, when the Windgarden Residence ceased to be the primary and only residence of the parties' minor child, Husband's obligations with respect to expenses on the home, including the mortgage, ceased. In his petition, Husband asserted that Wife had breached the parties' MDA by refusing to pay the mortgage, homeowner's insurance, property taxes, and homeowners' association fees associated with the Windgarden Residence notwithstanding the trial court's order; that he had continued to pay the expenses in order to protect his credit; and that the court previously had awarded Husband a judgment against Wife in the amount of $145,599.28, including $105,986.68 for expenses paid by Husband from December 2010 through July 23, 2013.[4] Husband prayed for an additional judgment against Wife in the amount equal to all Windgarden Residence expenses paid by Husband from July 26, 2013.

Following a hearing on May 12 and 13, 2014, the trial court entered judgment on Husband's petition on May 21, 2014. In its extremely detailed and comprehensive order, the trial court stated, in relevant part:

16. In 2010, the parties entered into a Marital Dissolution Agreement, which is a contract. Incident to the terms of the Marital Dissolution Agreement filed on February 18, 2010, [Wife] was to receive [the Windgarden Residence] . . . with [Husband] to pay the mortgage, homeowners' insurance, property taxes and homeowners' association fees for so long as the Windgarden Residence was the primary residence of

---

[4]Husband asserted that the trial court's earlier judgment awarded him attorney's fees arising from the parties' cross-petitions for contempt and Wife's petition to change child custody back to her. The $105,986.68 judgment also appears to include an award of attorney's fees.

3

[Wife] and the parties' minor child. [Husband] faithfully paid the expenses on the Windgarden Residence as required by the Marital Dissolution Agreement. [Husband] is the only person liable on the mortgage secured by the Windgarden Residence.

17. As set forth in the "Order on Father's Petition for Order Requiring Sale of Real Property Filed on July 11, 2012, and Second Preliminary Order on Petition for Injunction Suspending Mother's Parenting Time Pending Further Orders of the Court, for Scire Facias and Citation for Civil and Criminal Contempt, and for Attorney's Fees Filed on December 11, 2012" entered by the Court on March 7, 2014, nunc pro tunc to July 26, 2013, the Windgarden residence ceased to be the primary residence of the parties' child in December 2010, as a result of [Wife's] failure to properly parent the child. Accordingly, [Husband's] obligation to pay the expenses with the Windgarden Residence ceased at that time. Said order granted a judgment against [Wife] in favor of [Husband] in the amount of $105,986.68.

18. Since December 2010, and including the period since the hearing on "Father's Petition For Order Requiring Sale Of Real Property," [Wife] has failed and refused to pay the mortgage, homeowners' insurance, property taxes or homeowners' association fees on the Windgarden Residence, except perhaps for the increase in the homeowner's insurance premium as set forth in the "Order on Father's Petition for Injunctive Relief, for Scire Facias and Citation for Civil and Criminal Contempt and for Attorney's Fees," entered on July 15, 2010. [Wife], her child not of the parties' marriage, her sister's two children and her parents reside in the Windgarden Residence. [Wife] receives no support from her son's father or her sister or the fathers of her sister's children.

19. Because the mortgage is in [Husband's] sole name, he has continued to pay the mortgage, homeowners' insurance, property taxes or homeowners' association fees on the Windgarden Residence. The Court finds that [Husband] did not pay these expenses as a gift, but did so in order to protect his credit.

20. The Court finds that this is inequitable and contrary to the intent of the parties in the Marital Dissolution Agreement. If [Husband] had not executed a Quit Claim Deed in favor of [Wife], there would be no question concerning how this residence should be treated.

21. The Court finds that an additional judgment of $71,218.96 shall be, and is hereby, entered against [Wife] in favor of [Husband], said sum

4

representing expenses paid by [Husband] toward Windgarden Residence expenses since the announcement of the prior judgment, or not otherwise included therein, as set forth on Exhibit 6 to the proceedings.

22. The Court opined at the last hearing that if [Wife] did not pay the ordered expenses, then [Husband] could file an independent action. The Court meant a claim, which could have been brought as a petition within the domestic relations case. However, incident to that separate action, which has been consolidated with the domestic matter for hearing, the Court finds that it may take further action.

In her brief, Wife asserts that the trial court erred by finding that she breached the parties' MDA by failing to pay the expenses associated with the Windgarden Residence because the MDA does not include a provision requiring her to pay the mortgage, homeowners' insurance, or homeowners' association fees. She further asserts that Husband was aware of his obligation to pay expenses associated with the residence when he quitclaimed the residence to her in February 2010; that the MDA provides that Wife may reside in the residence for as long as she desires to do so; and that the MDA provides that Wife would receive the proceeds arising from any sale of the residence. Wife additionally asserts that the MDA provides that Husband's obligation to pay expenses associated with the residence would cease upon sale of the property, payment in full of the mortgage, or if the residence ceased to be the "primary and only residence of the parties' minor child and [Wife]." She asserts that "it is reasonable for [Wife] to have an expectation that she would receive the Windgarden property as a result of the" final decree of divorce incorporating the parties' MDA, and that now Husband seeks to renegotiate the MDA.

We begin our analysis by observing that Wife's right under the MDA to reside in the Windgarden Residence is not the issue at dispute in this matter. The trial court's March 2014 order, entered *pro nunc tunc* to July 2013, clearly permitted Wife to remain in the residence as long as she paid the mortgage and other expenses associated with it. Rather, the issue presented, as we perceive it, is whether the terms of the parties' MDA relieve Husband of his obligation to pay the mortgage and costs associated with the Windgarden Residence if it ceased to be the primary residence of the parties' child. This issue requires us to construe the relevant provisions of the parties' MDA. Construction of the contractual provisions of an MDA is a matter of law. *Barnes v. Barnes*, 193 S.W.3d 495, 489 (Tenn. 2006). Accordingly, we review a trial court's interpretation of an MDA *de novo*, with no presumption of correctness. *Id.*

Paragraph 4 of the parties' MDA provides:

Husband owns real property known municipally as . . . the "Windgarden Residence" . . .

5

Wife shall receive the Windgarden Residence and may reside in said residence as long as she desires to do so.

The Windgarden Residence presently is encumbered by a mortgage . . . . Husband shall pay, indemnify and hold Wife harmless from the payment of this mortgage, as well as the property taxes, homeowners' insurance and the . . . homeowners association annual dues on said residence. Wife shall pay, indemnify and hold Husband harmless from the payment of all other expenses associated with the Windgarden Residence. To the extent, if any, that the utilities and other services associated with the Windgarden Residence are in Husband's name or the parties' joint names, Wife shall take all steps necessary to remove Husband's name from same within seven days of the date of the execution of this Agreement.

Upon the sale of the Windgarden Residence, Wife will receive the proceeds. Should Wife elect to reside in the Windgarden Residence until the mortgage is paid in full, Husband shall execute a Quit Claim Deed at that time, transferring all of his right, title and interest in and to the Windgarden Residence to Wife and the parties' son.

Husband's obligations pursuant to this paragraph shall terminate if the Windgarden Residence ceases to be Wife and the party's (sic) minor child's primary and only residence or upon the earlier to occur of (a) the sale of the Windgarden Residence; or (b) Husband's payment in full of the mortgage obligation.

It appears that Wife elected to remain in the residence, and it is undisputed that Husband quitclaimed the property to her before the mortgage was paid in full. It also is undisputed that the parties' minor child no longer resides in the residence but has resided with Husband since December 2010.

Under the plain terms of the MDA, Husband's obligation to pay the costs associated with the Windgarden Residence ended when the parties' minor child ceased to reside in the residence. Although the MDA does not explicitly state that Wife would assume responsibility for the expenses and costs associated with the residence should Husband's obligations cease, we observe that Paragraph 13 of the MDA provides:

Except as otherwise set forth herein, each of the parties shall be responsible for the payment of any debt that he or she has incurred. Each of the parties agrees that he or she will not cause to be charged any debt in the name of the other party or in the parties' joint names.

6

Thus, construing the MDA as a whole, we agree with the trial court that Wife was required to pay the costs and expenses of the Windgarden Residence after Husband was relieved of his obligation to do so – *ie.,* after the residence ceased to be the primary residence of the parties' child. It is undisputed that she failed to do so. We accordingly affirm the trial court's finding that Wife breached the parties' MDA by failing to pay the mortgage, homeowners' insurance, and homeowners' association fees associated with the Windgarden Residence from the date the parties' minor child ceased to reside in the residence.

## Motion to Continue

We turn next to Wife's assertion that the trial court erred by failing to grant her motion to continue the May 2014 hearing of the matter in order to allow her additional time to conduct discovery with respect to Husband's breach of contract claim. A trial court's adjudication of a motion to continue is reviewed for an abuse of discretion. *Howell v. Ryerkerk*, 372 S.W.3d 576, 580 (Tenn. Ct. App. 2012). The party moving for a continuance carries the burden to demonstrate that circumstances justify it. *Id.* There must be some "'strong excuse' for postponing the trial date." *Id.* (quoting *Barber & McMurry, Inc. v. Top–Flite Development Corp. Inc.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986)). The relevant factors include: "'(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted.'" *Id.* (quoting *Nagarajan v. Terry*, 151 S.W.3d 166,172 (Tenn. Ct. App. 2003)). In its May 21, 2014 order, the trial court stated:

> At the commencement of the hearing on May 12, 2014, and at other times throughout the hearing, [Wife] requested a continuance to secure an attorney. After the first day of trial, on May 13, 2014, an attorney appeared on [Wife's] behalf, stating that she was not [Wife's] attorney of record and had not been retained to represent [Wife], but was appearing for the purpose of requesting a continuance.
>
> On each occasion on May 12 and 13 when a continuance was requested, the Court denied the request. The Court finds that [Wife] has been aware since September 30, 2013, when the Court of Appeals rendered its decision that certain issues would be determined. The Court views [Husband's] "Petition to Modify Child Support and for Attorney's Fees" filed on October 2, 2013 as part and parcel of the remand of the Court of Appeals.

7

[Wife] has been aware since July 7, 2012 when Mr. D.[5] filed his "Father's Petition For Order Requiring Sale Of Real Property" that he was requesting the sale of the Windgarden Residence and has been aware since July 26, 2013 that this Court has determined that [Wife], not [Husband], was responsible for the expenses associated with that residence since December 2010 when this Court entered its "Preliminary Order on Father's Amended and Supplemental Petition for Scire Facias and Citation for Civil and Criminal Contempt" and the Windgarden Residence ceased to be the child's primary residence.

Notwithstanding the Court's denial of [Wife's] request for a continuance, the Court granted [Wife's] request for a continuance of the issues raised in [Husband's] "Petition for Injunction Suspending Mother's Parenting Time Pending Further Orders of the Court, for Scire Facias and Citation for Civil and Criminal Contempt, and for Attorney's Fees" filed on December 11, 2012, which were not heard on July 26, 2013, but were reserved for determination at a later date. The Court finds that the reserved issues include criminal contempt counts against Ms. M. and that she should have an opportunity to seek court-appointed counsel.[6]

With respect to Wife's motion to continue to allow her time to conduct further discovery of Husband's breach of contract claim, the trial court stated:

[Wife] requested a continuance on [Husband's] April 2, 2014 Complaint in order to conduct discovery. The Court finds that none is necessary. [Wife] has had ample opportunity to refinance the mortgage in her name and to assume responsibility for the payment of expenses for the Windgarden Residence, but has failed to do so. She admitted that she has not done so and, therefore, there is nothing to discover.

Upon review of the record, we find no abuse of discretion on the part of the trial court and affirm on this issue.

**Child Support**

We turn next to whether the trial court erred in its calculation of Husband's child support arrearage and by crediting Husband for amounts paid toward necessaries for the parties' child. We begin our discussion of this issue by noting that Husband was found

---

[5] The trial court's opinion contained the full last name of the parties. Consistent with our earlier statement, we are substituting initials for the parties' last names.

[6] In August 2014, Wife reported to jail to serve 82 days for contempt.

to be in arrears for child support due from February 2012 through September 2013. We additionally note that Wife's appeal of the trial court's June 2012 order – which followed a January 2012 hearing – was pending in this Court during that period.[7] Wife's argument, as we understand it, is that the amount credited to Husband for necessaries provided for the child exceeds the amount of his outstanding child support obligation and that the trial court erred by including certain medical and travel expenses as necessaries.

As we recently noted:

Although a trial court may not retroactively modify a parent's support obligation, this Court has authored numerous opinions regarding the authority of trial courts to offset child support arrears based on the obligor's expenditures to provide necessaries for the child. *See Peychek v. Rutherford*, No. W2003–01805–COA–R3JV, 2004 WL 1269313, at *4 (Tenn. Ct. App. June 8, 2004); *Brownyard v. Brownyard*, No. 02A01– 9803–CH–00063, 1999 WL 418352 (Tenn. Ct. App. June 22, 1999); *Hartley v. Thompson*, 01A019502–CV–00044, 1995 WL 296202 (Tenn. Ct. App. May 17, 1995); *Oliver v. Oczkowicz*, No. 89–396–II, 1990 WL 64534 (Tenn. Ct. App. May 18, 1990). In *Oliver,* this Court allowed "a credit for voluntary payments made on behalf of the children only where the payment is for the children's necessaries which are not being supplied by the custodial parent." *Id.*, 1990 WL 64534 at *2. "The obligation to provide necessaries requires the provision of appropriate food, shelter, tuition, medical care, legal services, and funeral expenses as are needed." *Peychek*, 2004 WL 1269313 at *4. "In order to maintain a successful claim for necessaries, [the claiming parent] 'must prove: (1) that the child needed the particular goods or services that were provided, (2) that [the non-claiming parent] had a legal obligation to provide the goods or services, (3) that [the non-claiming parent] failed to provide the goods or services, and (4) the actual cost of these goods or services.'" *Id*. (quoting *Hooper v. Moser*, M2001–02702–COA–R3–CV, 2003 WL 22401283, at *3 (Tenn. Ct. App. Oct. 22, 2003)). The rationale is that a credit against a child support arrearage is not a retroactive modification of support but is given in recognition "that the obligor parent provided the support the court ordered in the first place." *Netherton*, 1993 WL 49556, at *2.

*Martin v. Martin*, No. W2014–01007–COA–R3–CV, 2015 WL 2400583, at *4 (Tenn. Ct. App. May 20, 2015).

---

[7] In September 2013, we reversed the trial court's June 2012 order modifying Husband's child support on the ground of insufficient notice. We stated that Husband was not precluded from filing a petition to modify child support on remand.

In its May 2014 order, the trial court found that Husband's child support obligation for the relevant period was $3,000 per month; that Husband paid Wife $717 per month; and that Husband owed Wife $40,641 in child support arrears. The trial court found that Husband sought a credit in the amount of $48,207.11; that some of the expenses should not be credited to Husband; and that Husband had demonstrated necessaries in the amount of $43,401.69. The trial court thus reduced Husband's child support arrearage to $0. Upon review of the trial court's order and the several exhibits attached to it, we find that the evidence does not preponderate against the trial court's finding. We affirm on this issue.

### Award of Property to Offset Judgment

We finally turn to Wife's assertion that the trial court erred by ordering her to vacate the Windgarden Residence and to quitclaim the property back to Husband to offset the judgment awarded to Husband. In its May 2014 order, the trial court found that Husband was entitled to fees and expenses pursuant to this Court's order of remand in September 2013; that his attorney submitted an affidavit of fees and expenses in the amount of $16,311.61; and that this amount was reasonable and necessary. The trial court noted that, in March 2014, it had entered a judgment *nunc pro tunc* to July 2013 in favor of Husband in the amount of $105,986.68 for expenses paid on the Windgarden Residence. It entered an additional judgment in the amount of $71,218.96 for amounts paid by Husband since entry of the court's previous order. The trial court found that neither party had any equity in the residence, which appears to be undisputed. It is also undisputed that Wife has not paid the judgments awarded to Husband. The trial court stated in its judgment:

26. There is no question that the Court could order the sale of the Windgarden Residence.

27. The Court finds that the only equitable relief is that the Windgarden Residence shall be, and is hereby, divested from [Wife] and vested into [Husband], the mortgage holder.

28. The Court declines to order a sale in hopes that the real estate market recovers. Neither party has equity in the Windgarden Residence. The Court finds that there is no equity in the Windgarden Residence and that to order a sale of the property would be to [Husband's] detriment.

29. The Court orders [Wife] to execute a Quit Claim Deed transferring to [Husband] all of her right, title and interest in and to the Windgarden Residence, thereby ending the accrual of a judgment against [Wife] for the payment of expenses by [Husband] and transferring from [Wife] to [Husband] all right, title and interest in and to the Windgarden Residence.

10

Counsel for [Husband] shall not record the deed until after May 27, 2014, at which time [Husband] may take any additional steps necessary to remove [Wife] from the Windgarden Residence if she has not already vacated.

Although the trial court made no findings with respect to the value of the Windgarden Residence, it appears undisputed that, when this matter was heard in May 2014, it had a fair market value of $425,000 to $439,000 and was encumbered by a mortgage of approximately $440,000.

Wife's argument, as we understand it, is that the Windgarden Residence was awarded to her under the parties' MDA; that the trial court erred by finding that Wife was responsible for the mortgage and other costs associated with the residence after the parties' child ceased to reside there; and that the trial court accordingly erred by offsetting the judgment by ordering Wife to quitclaim the residence to Husband.

It is not disputed that the parties' son has not resided in the Windgarden Residence since December 2010. Additionally, as stated above, Husband's obligation to pay the mortgage and costs associated with the residence ceased in December 2010. Wife's argument on this issue consists of her contention that the trial court erred by finding that she breached the MDA and her assertion that it "[was] reasonable for [her] to have an expectation that she would receive the Windgarden property as a result of the parties' final decree of absolute divorce which incorporated the parties' martial dissolution agreement." In light of our foregoing discussion, we affirm on this issue.

### Attorney's Fees

In the argument section of his brief, Husband asserts that he is entitled to attorney's fees under Paragraph 19 of the parties' MDA, which provides:

In the event that it should be determined, either by this Court or by any other court of competent jurisdiction, that either party has willfully breached any provision of this Agreement, then the breaching party shall pay to the other party all reasonable attorneys' fees and costs incurred in the enforcement of any such provision or provisions as such are adjudged by the Court upon full hearing.

As discussed above, the question presented by this appeal is more correctly characterized as one of contract interpretation rather than willful breach. Further, it does not appear that the question of whether Wife's breach of the parties' MDA was "willful" was tried in the trial court. It is well-settled that issues not raised in the trial court cannot be raised for the first time on appeal. *Barnes*, 193 S.W.3d at 501. Thus, we decline to address whether Husband is entitled to attorney's fees on appeal under the parties' MDA.

Husband also asks this Court to exercise its discretionary authority to award him attorney's fees on appeal. We observe that the current appeal arises from Husband's breach of contract claim. Tennessee follows the American Rule with respect to attorney's fees. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). Under the American Rule, litigants are required to pay their own attorney's fees in the absence of a statute or contractual agreement providing otherwise. *Id.* As noted above, the parties' MDA provides for an award of attorney's fees upon a finding of willful breach and the issue of willfulness was not tried in the trial court. Husband accordingly is not entitled to an award of attorney's fees on appeal. Husband's request is denied.

## Holding

In light of the foregoing, the judgment of the trial court is affirmed. Costs on appeal are taxed to the Appellant, S.A.M.D., for which execution may issue if necessary. This matter is remanded to the trial court for enforcement of the judgment, the collection of costs, and such further proceedings as may be necessary and as are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE