**FILED**

**September 14, 2016**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 10:20 A.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Karen Cotton, as surviving spouse of Alan Lee Cotton, Decedent | ) Docket No. 2015-02-0061 |
| | ) |
| | ) |
| v. | ) State File No. 22812-2015 |
| | ) |
| HUMACare, Inc., et al. | ) |
| | ) |
| Appeal from the Court of Workers' Compensation Claims | ) |
| | ) |
| Brian K. Addington, Judge | ) |

---

### Vacated and Remanded – September 14, 2016

---

The claimant is the surviving spouse of a worker who died from injuries sustained after falling from a cellular tower. The defendant denied it employed the decedent and further denied it was a co-employer or special employer for workers' compensation purposes. Following a bifurcated compensation hearing, the trial court determined that the defendant was a co-employer of the decedent by contract, but that it bore no responsibility for workers' compensation death benefits because it paid no portion of the decedent's wages. The claimant has appealed. Upon careful consideration of the record and arguments of counsel, we vacate the trial court's dismissal of the case and remand it to the trial court for further proceedings as may be necessary.

Judge Timothy W. Conner delivered the opinion of the Appeals Board, in which Judge David F. Hensley joined. Judge Marshall L. Davidson, III, concurs separately.

Isaac T. Conner, Nashville, Tennessee, for the appellant, Karen Cotton, as surviving spouse of Alan Lee Cotton, Decedent

Byron K. Lindberg, Nashville, Tennessee, for the appellee, HUMACare, Inc.

1

## Factual and Procedural Background

Alan Lee Cotton ("Decedent"), a cellular tower technician, tragically suffered fatal injuries on December 18, 2014, when he fell approximately 105 feet while working on a cellular tower. His surviving spouse ("Claimant") asserted two separate claims for workers' compensation death benefits against two companies, both of which she alleged were Decedent's co-employers.[1] Because the relationship between these two companies is complicated, it is helpful to examine the foundation of that relationship.

On May 12, 2014, HUMACare, Inc. ("HUMACare"), entered into an "employment services consulting agreement" ("the Agreement") with Central USA Wireless ("Central"), Decedent's immediate employer. According to the Agreement, HUMACare was "an independent consultant . . . engaged in the business of providing human capital management and employee benefit services." The Agreement stated that it "defines the allocation of responsibilities" between HUMACare and Central. Employees covered by the Agreement "only include those employees who have completed HUMACare['s] employment assistance process." For such employees, HUMACare was responsible, among other things, for: (1) the "calculation and remittance of Employee wages"; (2) the "reporting and payment of federal and state employment taxes"; (3) the "maintenance of workers['] compensation insurance coverage . . . and management of workers['] compensation claims."

In addition, the Agreement provided that HUMACare "shares the responsibilities and liabilities of being an employer such that they co-employ Employees for workers' compensation purposes under [Ohio law]." However, the Agreement also provided that "HUMACare may not instruct or direct the performance of Employees"; that it "does not require particular training for Employees"; that "Employees' services are not part of the regular business of HUMACare"; that it "does not supervise or pay the expenses of Employees"; and that it "will not furnish tools, instrumentalities or other materials for Employees."

The Agreement also obligated HUMACare to "maintain workers['] compensation coverage for Employees . . . in accordance with applicable law." It required Central to "[c]ooperate with HUMACare in the maintenance of a drug-free workplace" and to cooperate "in conducting pre-employment background investigations, as permitted by law, for such job positions as may be determined by HUMACare and its workers' compensation insurer or third party administrator to represent significant risk." Moreover, Central was obligated to "[c]ooperate in the investigation of any workplace complaint or injury" and to provide HUMACare "the right to inspect and access, upon request, [Central's] premises, records and Employees in order to investigate the alleged

---

[1] The surviving spouse's claim against the second company, Central USA Wireless, was settled prior to the bifurcated compensation hearing in the present case.

2

violation of any Handbook Policy, safety concern, injury or other workplace incident." In addition, the Agreement required Central to "notify HUMACare before assigning any Employee to work outside the state of Ohio." Finally, the Agreement required Central to "[c]omply with HUMACare['s], its workers' compensation insurer[']s, or third party administrator's modified duty requirements," and it further required Central to "pay to HUMACare all workers' compensation wages disbursed to Employee" if it was unable to accommodate modified duty restrictions.

Exhibit A to the Agreement referenced the rights and obligations of the parties to the contract with respect to workers' compensation. Specifically, HUMACare charged Central certain fees for providing a number of services, including "workers' compensation insurance." However, Exhibit A specified the "categories of employees" to which such fees applied, and only listed Ohio employees who were within the classification code 8810.[2] It then noted that "HUMACare will also investigate the best options for your non-Ohio employees in regards to workers' compensation coverage[.]" The Agreement, including Exhibit A, was signed by representatives of both HUMACare and Central.

On December 15, 2014, Decedent received a conditional offer of employment from Central as a cell tower climber, contingent upon his successfully passing a drug test. The next day, Decedent passed the drug test and Central purchased a ticket for Decedent to travel from Sumter, South Carolina to Nashville, Tennessee. In Nashville, Decedent received competency training and passed a written safety examination. Subsequently, Decedent filled out an "employment packet" that contained HUMACare's logo at the top of the document and listed "Central USA Wireless" as the "Client Company Name." After filling out the employment packet, Central transported Decedent to Greeneville, Tennessee, for his first assignment. The fatal accident followed on December 18, 2014.

Following unsuccessful mediation, a dispute certification notice was completed that raised HUMACare's status as an employer as an issue in the case. Thereafter, the parties agreed to bifurcate the compensation hearing to address whether HUMACare was an employer of Decedent. At the compensation hearing, the trial court stated that "[w]e bifurcated this trial, and today the only issue that we're going to be talking about is whether HUMACare is [an] employer for this case. So the proof is limited to that today." After the hearing, however, the trial court entered an order finding not only that HUMACare was a co-employer of Decedent, but that HUMACare owed no workers' compensation death benefits because it bore no liability for any portion of Decedent's wages as described in Tennessee Code Annotated section 50-6-211 (2015).[3] It therefore

---

[2] Employer's witness testified that classification code 8810 referred to clerical workers.

[3] Tennessee Code Annotated section 50-6-211(a) (2015) apportions liability among multiple employers based on the percentage of an employer's wage liability. Because the trial court determined that

3

denied Claimant any death benefits from HUMACare and dismissed her case with prejudice. Claimant has appealed.

## Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)    Violate constitutional or statutory provisions;
(B)    Exceed the statutory authority of the workers' compensation judge;
(C)    Do not comply with lawful procedure;
(D)    Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
(E)    Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

### *Scope of Bifurcated Compensation Hearing*

In its "Initial Hearing Order as to Bifurcated Issue of Employment," entered May 20, 2015, the trial court stated that "[t]he contested issue in this case which has been bifurcated for purposes of this hearing is who the employer is for purposes of the Tennessee Workers' Compensation law *if the court determines this to be a compensable claim.*" (Emphasis added). Thereafter, the court stated that "[u]pon receipt of the autopsy, toxicology and other related reports from TOSHA, the party who obtained those reports shall provide copies to all counsel herein and shall notify the Court so that the Initial Hearing on the bifurcated issue can be scheduled. *The Court shall then schedule an Initial Hearing on the remaining issues in the case.*" (Emphasis added). This language was reiterated verbatim in an amended initial hearing order entered September 22, 2015.

---

HUMACare merely forwarded Decedent his paycheck from Central, it concluded that HUMACare's wage liability was zero and, thus, was not responsible for paying workers' compensation death benefits.

However, in a subsequent order styled "Second Amended Initial Hearing Order as to Bifurcated Issue of Employment," issued on November 24, 2015, the scope of the contested issue was narrowed. This order indicated that "[t]he contested issue in the first hearing of this case which has been bifurcated is who the employer is for purposes of the Tennessee Workers' Compensation [L]aw." Removed from this order is any indication that compensability of the claim, or any other issue, would be addressed in the first bifurcated hearing. Furthermore, as indicated above, the trial court specifically stated at the outset of the bifurcated hearing that "the only issue that we're going to be talking about is whether HUMACare is [an] employer for this case."

In *Rucker v. Flexible Staffing Solutions of Tennessee*, No. 2015-02-0126, 2016 TN Wrk. Comp. App. Bd. LEXIS 23 (Tenn. Workers' Comp. App. Bd. May 13, 2016), we addressed a case in a similar procedural posture. The parties and trial court in *Rucker* agreed to hold a bifurcated hearing on the issue of compensability. *Id.* at *4. However, when the trial court issued its order, it not only resolved the compensability issue, but also addressed the employee's entitlement to temporary disability and medical benefits. *Id.* at *5. In vacating that order and remanding the case, we concluded that "the trial court went beyond the scope of the bifurcated hearing when it awarded temporary disability and medical benefits." *Id.* at *15.

Such is the case here. In the second amended initial hearing order, the trial court made clear that the only issue to be addressed at the bifurcated compensation hearing was the identity of Decedent's employers for purposes of Tennessee's Workers' Compensation Law. That understanding was reiterated at the beginning of the hearing. Thus, as we did in *Rucker*, we conclude that the trial court exceeded the expressed scope of the bifurcated hearing in determining that HUMACare bore no liability for death benefits and in dismissing the claim with prejudice. Thus, the trial court's determination that HUMACare bore no liability for death benefits and its dismissal of the claim are vacated.

*The Ripeness Doctrine and Premature Appeal*

In responding to Claimant's appeal, HUMACare argues that the trial court erred in concluding it was a co-employer of Decedent for purposes of Tennessee's Workers' Compensation Law. HUMACare urges us to reverse that finding if we conclude that the trial court inappropriately dismissed the claim. However, this issue is not ripe for appeal and is premature.

The ripeness doctrine assists courts in determining whether a particular case presents a justiciable legal issue. It "focuses on whether the dispute has matured to the point that it warrants a judicial decision. The central concern of the ripeness doctrine is whether the case involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all." *Smith v. Intex Enterprises, LLC*,

5

No. E2009-02557-WC-R3-WC, 2011 Tenn. LEXIS 194, at *8 (Tenn. Workers' Comp. Panel Mar. 7, 2011) (quoting *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 848-49 (Tenn. 2010)). In the present case, the trial court went beyond the expressed scope of the bifurcated compensation hearing in addressing HUMACare's potential liability or lack thereof. Thus, the issue of whether the trial court erred in finding HUMACare to be an "employer" for purposes of the Tennessee Workers' Compensation Act is not ripe for appeal.

Moreover, this aspect of the appeal is premature. In *Bingham v. Kimberly-Clark, Inc.*, No. 02S01-9804-CV-00040, 1999 Tenn. LEXIS 204 (Tenn. Workers' Comp. Panel Mar. 29, 1999), an employer sought to appeal a trial court's determination that the employee suffered a compensable injury and that it was responsible for the payment of medical benefits. *Id.* at *1-2. The order entered by the trial court included a finding that "[t]he [c]ourt will retain jurisdiction of this matter to determine if Plaintiff is entitled to additional workers' compensation benefits." *Id.* at *2-3. On appeal, the Special Workers' Compensation Appeals Panel explained that since fewer than all of the claims had been addressed in the trial court's order, Rule 54.02 of the Tennessee Rules of Civil Procedure governed the appeal. *Id.* at *6. Pursuant to that rule, in order for the trial court's order to be appealable, the trial judge must have directed the entry of a "final judgment" and made an express determination that there was no just reason for delay. *Id.* at *7. The trial judge did neither. *Id.* at *8. As explained by the Panel, "[a]ll of the interlocutory orders entered by the trial court can be revised at any time before the entry of the judgment adjudicating all the claims and rights and liabilities of all the parties." *Id.* Thus, it determined that the employer's appeal "cannot be entertained" pursuant to Rule 54.02. *Id.*

Therefore, as we have discussed previously, compensation orders that do not resolve all justiciable issues generally are not appealable. *See Rucker*, 2016 TN Wrk. Comp. App. Bd. LEXIS 23, at *17-18; *see also* Tenn. R. Civ. P. 54.02. In the present case, the trial court went beyond the expressed scope of the bifurcated hearing in deciding that HUMACare had no liability and in dismissing the case. Assuming for purposes of this analysis that the trial court *had* limited its determination to whether HUMACare was an employer for purposes of the Tennessee Workers' Compensation Law, as it indicated to the parties it would, and that it made no other findings in its order, any appeal of such an order would be premature. Accordingly, while we have concluded that the trial court inappropriately dismissed the case with prejudice, we also conclude that no other issues are ripe for appeal and that it is premature to address the issues raised by Employer.

**Conclusion**

Based on the foregoing, the portions of the trial court's order addressing the wage liability of HUMACare and dismissing the claim with prejudice are vacated and the case

6

is remanded to the trial court for further proceedings as may be necessary. All other issues raised by the parties are not ripe for appeal and the appeal of any such issues is premature.

_Tim W. Conner_
Timothy W. Conner, Judge
Workers' Compensation Appeals Board



**FILED**

**September 14, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 10:20 A.M.**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Karen Cotton, as surviving spouse of | ) | Docket No.  2015-02-0061 |
| Alan Lee Cotton, Decedent | ) | |
| | ) | |
| v. | ) | State File No.  22812-2015 |
| | ) | |
| HUMACare, Inc., et al. | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Brian K. Addington, Judge | ) | |

## Concurring Opinion – Filed September 13, 2016

Marshall L. Davidson, III, Presiding Judge, concurring.

I agree with my colleagues that the trial court exceeded the expressed scope of the bifurcated trial.  I write separately to (1) express my concerns regarding the practice of conducting bifurcated trials as exemplified by this case, and (2) why I believe the employer/co-employer issue was not ripe for the trial court to resolve.

### A.

First, although we have not yet been called upon to address whether or under what circumstances a bifurcated trial is authorized or warranted, we have noted "that resolving litigation in piecemeal fashion may delay a final resolution of [a] case and rarely serves the interests of judicial economy."  *Rucker v. Flexible Staffing Solutions of Tenn.*, No. 2015-02-0126, 2016 TN Wrk. Comp. App. Bd. LEXIS 23, at *15 n.4 (Tenn. Workers' Comp. App. Bd. May 13, 2016).  This case is a prime example.  The parties prepared for and participated in a bifurcated trial.  The trial was conducted and the trial court subsequently drafted and filed an order disposing of multiple issues.  The order was appealed, the parties briefed the issues, and oral argument was conducted.  The trial court's order is now being vacated in part and the case is being sent back to the trial court where more hearings are likely with the potential of additional appeals and still more

1

litigation.  The end result is that the case will have remained unresolved much longer than it would have otherwise, and at greater cost and continued uncertainty to the parties.

While it may serve the interests of efficiency and justice to resolve some cases issue by issue in separate bifurcated trials conducted over time, an expeditious resolution in workers' compensation cases provides employees and businesses alike much needed finality and the ability to move on.  This is not to suggest, of course, that speed for the sake of speed should be the goal.  Clearly, it is not.  Instead, as directed by the legislature, workers' compensation disputes should be resolved in a "fair, equitable, expeditious, and efficient" manner.  Tenn. Code Ann. § 4-3-1409(b)(2)(A) (2016).  In my view, moving a case toward a resolution one inch at a time through a series of bifurcated trials is generally inconsistent with these objectives and should be avoided unless a sound reason suggests otherwise given the peculiar circumstances of a given case.

B.

Second, resolving a case incrementally via multiple bifurcated trials carries the inherent risk that one issue may be decided that hinges upon other unresolved issues, creating a potential ripeness problem for both the trial and reviewing courts.  Again, this case is a good example.  The majority opinion concludes, correctly in my view, that the employer/co-employer issue is not ripe for a determination on appeal because other key issues in the case have yet to be resolved, most notably whether the claim is even compensable.  I would go further and conclude that the employer/co-employer issue was not ripe for *the trial court* to resolve.

The justiciability concept of ripeness, a well-established principle in Tennessee, requires a court to answer the question of "whether the dispute has matured to the point that it warrants a judicial decision." *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 848 (Tenn. 2010).  Ripeness "is peculiarly a question of timing" and "its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *West v. Schofield*, 468 S.W.3d 482, 490 (Tenn. 2015).  Thus, "the central concern of the ripeness doctrine is whether the case involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all." *B & B Enters. of Wilson Cnty., LLC*, 318 S.W.3d at 848.  Accordingly, "[i]f the controversy depends upon a future or contingent event, or involves a theoretical or hypothetical state of facts, the controversy is not justiciable." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000).  If the rule were otherwise, the "courts might well be projected into the limitless field of advisory opinions." *Id.*  In order to avoid this problem, "Tennessee courts follow self-imposed rules of judicial restraint so that they stay within their province to decide, not advise, and to settle rights, not to give abstract opinions." *Hooker v. Haslam*, 437 S.W.3d 409, 417 (Tenn. 2014); *see also Charter Lakeside Behavioral Health Sys. v. Tenn. Health Facilities Comm'n*, No. M1998-00985-COA-R3-CV, 2001

Tenn. App. LEXIS 58, at *14 (Tenn. Ct. App. Jan. 30, 2001) (courts should not "decide theoretical questions or render advisory opinions").

Here, the trial court, after conducting a bifurcated trial, determined that the defendant was a co-employer of the decedent, a finding that has little or no significance absent the existence of a compensable claim. Because this case "involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all," *B & B Enters. of Wilson Cnty., LLC*, 318 S.W.3d at 848, the trial court, in effect, addressed the *theoretical* liability of a party and, in doing so, issued an advisory opinion. The trial court's order of May 20, 2015, recognized this very problem when it stated that "[t]he contested issue in this case which has been bifurcated . . . is who the employer is . . . *if the court determines this to be a compensable claim*." (Emphasis added). Unless the claim is compensable, it makes no difference that the defendant may or may not be an employer/co-employer. If the idea behind conducting a bifurcated trial in this case was to streamline the litigation and thereby chart an efficient course for its ultimate resolution, the end result was just the opposite.

To date, we have been presented with two cases involving bifurcated trials, this one and *Rucker*, that had to be vacated because the trial courts' decisions exceeded the expressed scope of the bifurcation. It seems that "resolving litigation in piecemeal fashion" does indeed "delay a final resolution of the case and rarely serves the interests of judicial economy." *Rucker*, 2016 TN Wrk. Comp. App. Bd. LEXIS 23, at *15 n.4.

Marshall L. Davidson, III
Presiding Judge
Workers' Compensation Appeals Board

3

**FILED**

**September 14, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 10:20 A.M.**



**TENNESSEE BUREAU OF WORKERS' COMPENSATION
WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| Karen Cotton, as surviving spouse of | ) | Docket No. 2015-02-0061 |
| Alan Lee Cotton | ) | |
| | ) | |
| v. | ) | |
| | ) | State File No. 22812-2015 |
| HUMAcare, Inc., et al. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 14th day of September, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Isaac T. Conner | | | | | X | iconner@mansonjohnsonlaw.com |
| Byron Lindberg | | | | | X | blindberg@hallboothsmith.com |
| Brian K. Addington, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

*Matthew Salyer*

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov